430 So.2d 718 (1983)
Reginald P. FONTANA, Plaintiff-Appellant,
v.
ZURICH INSURANCE COMPANY, et al., Defendants-Appellees.
No. 15284-CA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
Rehearing Denied May 5, 1983.
*719 Paul Henry Kidd, Monroe, for plaintiff-appellant.
Davenport, Files & Kelly by Thomas W. Davenport, Monroe, for defendants-appellees.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
The primary issue is whether a corporation's automobile liability policy, general liability policy, or excess liability policy provide liability coverage for a corporate employee whose negligence caused job-related personal injury in 1974 to the corporation's president who had elected not to be covered by the corporation's workers compensation insurance when such an election could be *720 made under the law. LRS 23:1038-1040, since repealed.[1]
The corporate president sued the insurance carriers in a direct action. The coverage issue was answered negatively and his demands were rejected in a judgment which he now appeals. We affirm.

FACTS
The plaintiff-president is Reginald Fontana. The negligent employee is his brother, Steve Fontana, who is also a vice-president of the Fontana corporation. The president was manually working on the underside of a suspended truck belonging to the corporation when Steve Fontana negligently caused the truck to fall and injure his brother.
Each of the defendant insurers denied that its policy or policies provided liability coverage to Steve Fontana or for the occurrence complained of and alternatively pleaded affirmative defenses of contributory negligence, assumption of risk, and "fellow servant doctrine", which before enactment of the workers compensation law was often pleaded in defense of such actions as this. See Malone-Johnson, "Workmen's Compensation", 2d Ed., La. Civil Law Treatise, Vol. 13, § 6-12.
After a jury heard testimony, defendants' motion for directed verdict was denied insofar as it would have precluded the jury from determining the issues of contributory negligence and assumption of risk. The motion was taken under advisement insofar as the issue of coverage was concerned and the jury was not instructed to decide this issue but was allowed and was instructed to decide, on interrogatories, the contributory negligence and assumption of risk issues and to assess damages while the judge considered the coverage question.
After the jury returned a verdict for plaintiff for $150,000, the trial court, notwithstanding the verdict, in written reasons, granted each defendant's motion for directed verdict, holding that each policy in question simply did not provide liability coverage under the circumstances. The judgment appealed mentioned the procedural developments referred to and rejected and dismissed plaintiff's demands.

ASSIGNMENTS OF ERROR
In five assignments of error, plaintiff asserts that the policy exclusions should not have been considered by the trial court because they were not affirmatively pleaded as required by C.C.P. 1005, that the jury was allowed to determine coverage as a factual issue and should not have been overruled by the trial court's upholding the motion for directed verdict after the jury returned its verdict.[2]
The pleadings and pre-trial statements timely and fairly informed plaintiff of the insurers' coverage defenses. Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618 (La.App. 2d Cir.1975). The answer of each defendant affirmatively sets forth the fact that plaintiff was injured while repairing the truck and the details of the repair, that Steve Fontana was also an employee of the corporation, and specifically denied that any [liability] coverage was afforded Steve Fontana in respect to the incident in question. Additionally we note that plaintiff addressed some of the coverage exclusions in his pre-trial memorandum and stated that the "key issue" concerns "whether or not petitioner [sic] is an employee and is thereby excluded from coverage of the policy."[3] Defendants' pre-trial memorandum *721 addressed the pertinent exclusions. We find no error in the trial court's conclusion that the pleadings and pre-trial statement of April 23, 1982, encompassed the exclusion defenses and that plaintiff was adequately placed on notice of defendants' intention to raise these defenses. Trial began on May 3, 1982.
Here we note that the coverage issue does not concern Reginald Fontana being insured for his loss or excluded from coverage, but concerns liability coverage that will protect Steve Fontana against his liability to pay damages, if any, to Reginald Fontana. See Black's Law Dictionary, "Liability Insurance", p. 824. The "employee" status of each, of course, is pertinent to the policy provisions.

THE COVERAGE ISSUE
Steve Fontana, as a vice president, is an executive officer of the corporation. He is also an employee of the corporation and was performing his employee duties operating the front-end loader holding the truck off the ground while plaintiff worked under the truck. Steve Fontana operated the front-end loader during the day of the accident. As an executive officer of the named insured corporation, Steve Fontana is an omnibus insured under the liability policies only while acting within the scope of his duties as an executive officer. The language of the general liability and the excess liability policies effectively and clearly says so in these words:
"Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
"(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officers, director, or stockholder thereof while acting within the scope of his duties as such;" (Emphasis added.)
"(d) any executive officer, director, other employee or stockholder of the Named Insured while acting within the scope of his duties as such;"
Moreover, the general liability policy states:
"This insurance does not apply:
* * * * * *
"(J) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured;"
and the excess liability policy states:
"This policy does not apply:
* * * * * *
"(b) to afford insurance to any employee with respect to injury to or the death of another employee of the same employer injured in the course of such employment."
The automobile liability policy effectively provides the same exclusion from coverage in these words:
"None of the following is an insured:
* * * * * *
"(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment."
Such provisions are commonly called cross-employee exclusions, and executive officers, under circumstances similar to Steve Fontana's circumstance when the liability occurred, were held to be excluded from liability coverage. Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (La.1970); Mauterer v. Associated Indemnity Corp., 332 So.2d 570 (La.App. 4th Cir.1976); Richard v. Hebert's Creamery, Inc., 415 So.2d 668 (La.App. 3d Cir.1982); Heiser v. Gibson, 386 F.Supp. 901 (E.D.La. 1974). Under the present law, an executive officer is deemed to be an employee of the corporation under the law who is entitled to w.c. benefits. LRS 23:1044. The cited cases hold that the w.c. statute may be *722 considered in determining whether an "employee" is excluded from omnibus liability coverage afforded by the corporate employer's liability policy. Compare Credeur v. Luke, 368 So.2d 1030 (La.1979).
The fact that Reginald Fontana voluntarily elected to exclude himself from the w.c. insurance purchased by his corporation in 1974 does not change the result. Steve Fontana also elected to exclude himself. They could have been covered by w.c. had they not elected otherwise. The fact that Reginald Fontana was not covered by w.c. insurance does not affect the insurer's obligation under a liability policy to protect an omnibus insured against his liability in tort. That obligation is determined by the policy itself. In Heiser, supra, it was said:
"... The Court found that the purpose of these clauses is to `protect the named insured from liability arising out of its officer's use of a non-owned vehicle on behalf of the company.' Such a clause `in no way affects the operation of the exclusion clause when suit is brought against an omnibus insured....' The Court's interpretation of the non-owned vehicle clause prevents this court from drawing the inference the defendants urge.
"The Louisiana Supreme Court in Manuel looked to the workmen's compensation laws to determine the scope of coverage, finding that the purpose of a cross-employee exclusion is to preclude coverage in cases where compensation would be available to the injured employee. 236 So.2d at 812-813. Other Louisiana courts have turned to the workmen's compensation laws for guidance in interpreting clauses like the one at issue in this case. See e.g., Myers v. Fidelity & Casualty Co., La.App.1963, 152 So.2d 96. In this light, the provisions of LRS 23:1044 become particularly important: `Every executive officer elected or appointed and empowered in accordance with the charter or by-laws of a corporation ... shall be an employee of such corporation under this Chapter.' The cross-employee exclusion thus applies to executive officers and precludes liability under the company's automobile policy.
"The defendants argue that interpreting these two policies in this fashion leaves the executive officers uninsured, and that this result should be avoided if at all possible; they suggest that the policies' ambiguities should be construed in favor of coverage. This argument is sound, so far as it goes; but there is simply no ambiguity in either of these policies to enable them to be read in one light or another." 386 F.Supp. at p. 903.
Manuel, supra, perhaps the leading case on the subject, discussed the purpose of such policy provisions:
"... The policy was written primarily to protect the named insured, which paid the premium. If plaintiff is allowed here to sue the omnibus insured in tort, it would mean that the insurer's liability as to the omnibus insured is greater than it is as to the named insured. This would not be consistent with the intention of the parties to the contract....
"... We believe that the clause must be given the reasonable interpretation to effect its obvious intent and purpose. And if plaintiff's actions were of such nature as to be within the course of his employment so as to entitle him to workmen's compensation benefits from his and his co-employee's employer then he should be held to be within the course and scope of his employment within the terms of the insurance policy's exclusion clause. Consequently, resort must be had to the cases dealing with compensation claims to determine whether the plaintiff was in the course of his employment...."
"Inasmuch as the plaintiff herein would clearly have been entitled to receive compensation benefits, that is his only remedy (although he, like the plaintiff in the Myers case, supra, could collect only his medical expenses for the reason that he lost no salary).
"In this court, for the first time, the plaintiff urges that he should be permitted recovery because [the co-employee] was also an insured as an executive officer *723 of the corporation. He relies on that provision of the policy, heretofore quoted, which recites that the word `insured' shall include `any executive officer with respect to the use of a non-owned automobile in the business of the named insured.'
"The argument is without merit.... The purpose of the clause obviously was to protect the named insured from liability arising out of its officer's use of a non-owned vehicle on behalf of the company. It is parallel to those clauses which provide insurance protection to a private individual when he is driving a vehicle other than the one named in his policy. And it in no way affects the operation of the exclusion clause when suit is brought against an omnibus insured as [the co-employee] was in the instant case." 236 So.2d at pp. 812-813.
Both brothers, even as executives of the corporation, were "employees" of the corporation and they were both performing manual employee operations when the accidental injuries were sustained by Reginald Fontana. See Manuel, Mauterer, Richard, Heiser, supra.
In Credeur, supra, the supreme court recently observed that
"... In a policy in which the ... named insured is a corporate employer, it may indeed make sense coverage-wise to exclude as insureds all employees of the company including executives for the reason that injured co-employees are designedly restricted in the policy's contemplation to recovery of workmen's compensation benefits where injured in the course and scope of employment through the negligence of another employee of the company including by negligent operation of a motor vehicle." 368 So.2d at p. 1032. Emphasis supplied.

OTHER "ISSUES"?
Plaintiff argues that he should have been allowed, over defendants' objection, to have the jury consider whether the policy of general liability insurance should have been "reformed" because the insurance agent told him that if he elected to exclude himself from w.c. insurance he would be covered by the liability policy. Unlike the defendants, who were found to have timely and fairly informed plaintiff by pleadings and the written pre-trial statement of the defendants' coverage defenses, the plaintiff was found not to have timely and fairly informed defendant by pleadings and the written pre-trial statement of plaintiff's intent to inject the reformation issue. According to this record, the trial court correctly sustained the objection to plaintiff's attempt to inject this issue into these proceedings.
We also find no merit in plaintiff's argument that he was informed too late of defendant's coverage defenses to protect himself. Even if we assume the facts support plaintiff's contention, which they do not, plaintiff could have sought a continuance to protect himself. CCP 1154.[4]
The issues of when a motion for directed verdict should be ruled on and of whether a jury is entitled to determine "factual" issues related to coverage need *724 not be squarely decided. Plaintiff made no objection to the trial court's taking under advisement the coverage question raised by the motion for directed verdict.[5] We are obligated to review both the law and the facts whether the determination is made by a judge or a jury. LSA-Const. Art. 5, § 10. We or the trial court may notice on our own motion either or both the exception of no cause of action and the exception of no right of action. CCP 927. The latter exception may sometimes present legal questions which are dispositive of an issue. See Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972), and Smith v. Stephens, 412 So.2d 570 (La.1982). Even when an exception or motion is mislabeled, the appellate court may determine its thrust and effect. Smith, supra.
An appeal is taken from a judgment and not from the labels or reasons employed by the litigants or by the trial court. CCP 2082. See State in Interest of Mason, 356 So.2d 530 (La.App. 1st Cir.1977). We are required to render any judgment which is just, legal, and proper upon the record on appeal. CCP 2164. This record undeniably supports the finding that Steve Fontana, as an omnibus insured under each of the three policies of liability insurance of the corporation which employed him and which he served as an executive officer and employee, was not insured against his liability to his co-employee and co-executive, Reginald Fontana, for negligent injury when they were both engaged in the course of their employment. The judgment rejecting and dismissing Reginald Fontana's demands for such negligent injury pronounced this result and is correct, however it may have procedurally resulted. The jury verdict has been reviewed and given its appropriate weight in accord with our constitutional obligation to review facts and law. That verdict does not persuade us to a contrary result.
For detailed reasons assigned and supported by the trial court, which we have summarized and supported here, except to the extent that this opinion may modify such reasons, and at appellant's cost, the judgment appealed is AFFIRMED.
NOTES
[1] These sections of the law were in effect until repealed by Act 583 of 1975.
[2] Plaintiff's assignments assert

that the policy exclusions as a defense was not timely raised;
that the jury verdict should not have been overturned;
that the motion for directed verdict should not have been ruled on after the jury verdict;
that the jury's "factual" determination of coverage should not have been "usurped'; and
that the jury's award of damages was too low.
[3] Plaintiff also asserted in his pre-trial memorandum that "another issue arises whether Steve Fontana ... is a person insured ... [A]s an executive officer he would appear to be covered. However, under EXCLUSIONS..."
[4] This article reads in part:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
Comment (c) reads in part:
"In view of the retention of the Louisiana system of fact pleading effected by Arts. 854, 891, 1003 through 1005, supra, it is still necessary to plead in the answer all of the material facts on which all affirmative defenses are based. See Arts. 1003, 1005, supra. To this extent no change is made in the rules applied in all of the above cases. But the law is changed under the third sentence of the above article which authorizes the trial judge to permit amendments, even on the trial of the case, so as to plead the material facts supporting an affirmative defense pleaded only generally or as legal conclusions in the original answer."
The trial judge's discretion in allowing amendments is recognized. Brooks v. Fondren, 199 So.2d 588 (La.App. 3d Cir.1967).
[5] As to the coverage issue and the circumstances of the accident, the material facts were not disputed. Reginald Fontana saw that the suspension system of the truck needed attention and attempted to manually repair it. A chain was attached to the truck and to the front-end loader to raise the truck while Reginald Fontana worked underneath. The chain broke when Steve Fontana later caused the loader to abruptly jerk the chain.

A jury's determination that a UM carrier is obligated to pay damages to its insured has been upheld but that same jury's award of attorney fees and penalties was reversed. Hawthorne v. Southeastern Fidelity Ins. Co., 387 So.2d 26 (La.App. 3d Cir.1980).