466 So.2d 774 (1985)
Robert J. NEWMAN
v.
Shawn Stevens Cary, wife of/and R.F. CARY.
No. CA-2493.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1985.
*775 Edward F. Kohnke, IV, James F. Shuey, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, for plaintiff-appellant, Robert J. Newman.
Kenneth E. Badon, Lake Charles, for defendants-appellees, Shawn Stevens Cary and R.F. Cary.
Before BARRY, WARD and WILLIAMS, JJ.
WARD, Judge.
Robert J. Newman appeals a judgment dismissing his suit for breach of contract. He alleges that defendants, Shawn Stevens Carey and her husband, R.F. Carey, agreed to sell a 1978 Ferrari 308 GTS to him for $32,500.00 on March 9, 1981 and that they refused to deliver the vehicle, instead selling it to someone else. Newman's suit sought specific performance of the contract, or alternatively, damages.
Only Newman and Shawn Carey testified at the trial. Newman submitted into evidence a memorandum, handwritten by Shawn Carey, which he alleges contains the terms of the parties' agreement. The Trial Judge dismissed Newman's suit without written reasons.
The parties substantially agree on the facts leading up to the disputed contract: *776 Newman, a collector of Ferrari automobiles, was looking for a model like the one the Careys had for sale. A mutual acquaintance told R.F. Carey of Newman's interest, and Carey telephoned Newman. Either Friday afternoon or Saturday, Carey drove the Ferrari to Newman's home, where, after viewing and driving the car, Newman expressed interest in buying it. The Careys were advertising the car for $38,000.00; Newman and R.F. Carey agreed upon a cash sale for $30,500.00. Carey then told Newman that he could not complete the sale because the car was registered in his wife's name. The men drove to the Careys' home where it was discovered that the car was registered under the couple's names jointly, although Shawn Carey had purchased it during their marriage with money given her by a relative. In spite of the agreement between R.F. Carey and Newman, Shawn Carey insisted that Newman raise his offer, and an agreement was reached at the price of $32,500.00. Because the transfer of title required a release of a bank mortgage on the vehicle and because it was after banking hours, the parties agreed to complete the sale at the bank on Monday morning. Accordingly, Mrs. Carey wrote out the following statement:
I, Shawn Stevens Carey, hereby agree to sell one said Ferrarri 308 GTS, for 32,500 dollars to Mr. Robert J. Newman to be transacted on Monday March 9 at 9 a.m. I guarantee to deliver free and clear title.
She and Newman signed the statement.
At this point, the parties differ on the facts. Shawn Carey insists that the memorandum of the agreement does not represent the true understanding among the parties. She contends the actual agreement was to sell the car to Newman for $32,500.00 on March 9, only if the Careys did not get a better offer from another buyer over the weekend. (In fact, they did sell the car to someone else on Sunday, March 8, for $38,000.00.) Shawn Carey testified that she wrote out the agreement for Newman only because he insisted that he needed it to show to his wife and because she trusted him since he claimed to be a friend of her deceased grandfather.
The Careys did not appear at the bank where Newman went to meet them on Monday morning, March 9. His efforts to contact the Careys were unsuccessful. He filed the present suit on March 23, 1981.
After examining the evidentiary record including the agreement signed by Mrs. Carey and Mr. Newman, we conclude that the parties had a binding contract which was breached by Mr. and Mrs. Carey.
A sale in Louisiana requires consent of the parties with agreement as to the price and the thing to be sold. La.C.C. art. 2439. Although a contract to sell movable property need not be written, the parties' written agreement in this case is persuasive evidence that there was consent of all parties, and agreement as to price and object.
Nonetheless, Shawn Carey testified, without objection from Newman's counsel, that the written agreement did not reflect that the parties agreed to the sale only if a better offer was not received over the weekend. This testimony violates Louisiana's parol evidence rule:
Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.
La.C.C. art. 2276.
Clearly, Shawn Carey's testimony was evidence "against or beyond" the terms of the written agreement.
The Careys argue that Newman should not be allowed to object to the parol testimony on appeal since he did not make timely objection to its admission at trial. We believe Wade v. Joffrion, 387 So.2d 1265 (La.App. 1st Cir.1980), is correct. Louisiana's parol evidence rule is not substantive law, but a rule of evidence. Therefore, inadmissible parol evidence admitted without objection may be considered *777 by the Trial Court (and the Court of Appeal) in reaching a decision. However, simply because we consider Shawn Carey's testimony, does not mean that we find it persuasive.
Rather, considering the circumstances of the transaction, Shawn Carey's testimony is incredible, and we believe the Trial Judge erred in giving credence to it. We conclude his findings of fact are manifestly erroneous and we reverse.
Since we hold that the parties had a binding contract which the Careys breached, we now consider Newman's remedy. He sought specific performance of the sale as provided by Civil Code Article 2462. However, specific performance is impossible since the car is no longer in the Careys' possession. But Newman is entitled to damages.
Civil Code Article 1995 provides that "damages are measured by the loss sustained by the obligee and the profit of which he has been deprived." In general, the measure of the buyer's loss for the seller's refusal to perform a contract of sale is the difference between the contract price and the market value at the time and place of delivery. Mutual Rice Co. v. Star Bottling Works, 163 La. 159, 111 So. 661 (1927).
The contract price for the 1978 Ferrari 308 GTS was $32,500.00. Shawn Carey testified that on the day following the execution of the contract, she accepted an offer to sell the car for $38,000.00. On this evidence, we find the market value of the Ferrari to be $38,000.00. The difference between this value and the contract price is $5,500.00.
Accordingly, we render judgment in favor of Robert J. Newman for the sum of $5,500.00 with all costs of this appeal to be paid by Shawn Stevens Carey and R.F. Carey.
REVERSED AND RENDERED.