561 So.2d 192 (1990)
James D. DUGAS, et ux., Plaintiffs-Appellees,
v.
MODULAR QUARTERS, INC., et al., Defendants-Appellants.
No. 88-1308.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
*194 Perrin, Landry, Delaunay & Durand, Gerald C. Delaunay, Lafayette, for defendants-appellants.
*195 Strain, Dennis, Ellis, Mayhall & Bates, Robert P. Brenham, Lafayette, for plaintiffs-appellees.
Before DOMENGEAUX, C.J., and YELVERTON and KNOLL, JJ.
KNOLL, Judge.
Modular Quarters, Inc. (hereafter Modular Quarters), the Profit Sharing Trust for Employees of Modular Quarters, Inc. (hereafter Profit Sharing Trust), Kenneth J. Barras, Jefferson Prados, Robert J. Savoy, and Larry C. Degeyter (hereafter collectively referred to as defendants) appeal a judgment of the trial court which found them liable in solido on two promissory notes signed by them in favor of James D. Dugas and Patricia Broussard Dugas in the amount of $262,461.58, and recognized a real estate mortgage granted by Modular Quarters and Melyn Industries, Inc. (hereafter Melyn Industries), the latter being a predecessor in title to Profit Sharing Trust, in favor of plaintiffs. The trial court found that a provision in the act of sale between the plaintiffs, Modular Quarters and Melyn Industries, which may have limited the liability of the defendants, was inapplicable to the plaintiffs' suit on the promissory notes and mortgage; accordingly, the plaintiffs were entitled to judgment since the defendants had not raised a defense to the suit on the promissory notes or the mortgage, and the defendants' liability was satisfactorily proven.
The defendants contend that the trial court erred: (1) in failing to recognize that they were entitled to tender the property back to the plaintiffs in satisfaction of their indebtedness; (2) in failing to interpret and give meaning to the contract clause in the act of sale establishing their limited liability; (3) in failing to accept the uncontroverted testimony of the witnesses in the absence of a compelling reason not to do so; (4) in failing to impute knowledge of the plaintiffs' attorney to the plaintiffs regarding the meaning of the disputed contract provision; (5) in failing to reform the contract as necessary to express the true intent of the parties; (6) in failing to consider the defendants' affirmative defense of error, mistake or failure of cause; and, (7) in failing to consider the defendants' affirmative defense relating to the plaintiffs' failure to perform their obligations.
The plaintiffs answered the appeal, asking us to nullify the first of two judgments, dated June 3, 1988, signed by the trial court which was replaced in toto by the issuance of a second judgment, dated July 25, 1988. The defendants have appealed both judgments.

FACTS
On March 4, 1980, the plaintiffs signed a written agreement to sell approximately 71 acres of immovable property in Iberia Parish to Modular Quarters and Melyn Industries for $262,643.09. The purchase agreement, among other items not pertinent to this litigation, provided that: (1) no cash would be transferred at the time of sale; instead, the plaintiffs agreed to accept two promissory notes, one for $164,643.09 and the other for $100,000, executed by the two corporations and personally endorsed by the stockholders of both corporations to render themselves liable in solido for the obligations; and, (2) the sale was made subject to the plaintiffs' existing mortgage on the property in favor of the Federal Land Bank in New Orleans (hereafter Federal Land Bank) and with the understanding that the plaintiffs would make timely annual payments due to the Federal Land Bank.
On May 2, 1980, the plaintiffs sold the 71 acres to Modular Quarters and Melyn Industries in an authentic act signed by the plaintiffs and authorized officers of the two corporations. Included in that deed was the following provision:
"It is understood that the liability of purchaser [defined in the act as Modular Quarters and Melyn Industries] is limited to the value of the land transferred herein regardless of any balance which may be due on the promissory notes executed in connection herewith."
None of the other defendants signed the sale.
*196 On that same day, the two corporations and Larry C. Degeyter, Kenneth J. Barras, Jefferson Prados, and Robert J. Savoy, Modular Quarters' stockholders, and Lynn Meadows, Melyn Industries' stockholder, executed two promissory notes payable to the plaintiffs. To secure payment of the promissory notes, Modular Quarters and Melyn Industries mortgaged the 71 acres for $264,643.09 in favor of the plaintiffs. The special provision quoted hereinabove was not included in either the promissory notes or the act of mortgage.
Because of adverse economic times, Melyn Industries sold its interest in the 71 acres on January 18, 1984, to Profit Sharing Trust. In that document, Profit Sharing Trust assumed payment of the two promissory notes dated May 2, 1980, as well as the mortgage of that same date. The plaintiffs intervened in the act of sale with assumption of mortgage to specifically release Melyn Industries and Lynn Meadows, individually, from any and all obligations in connection with the May 2, 1980, sale, the two promissory notes, and the real estate mortgage. At the same time, the plaintiffs reserved all other rights they may have against Modular Quarters, Profit Sharing Trust, Larry Degeyter, Kenneth J. Barras, Jefferson Prados, and Robert J. Savoy, each of whom also intervened in the instrument to acknowledge the release and the plaintiffs' reservation of rights against them.
On May 29, 1985, when the defendants' were unable to make payments on the principal of the $100,000 promissory note, the plaintiffs granted an extension until May 2, 1986, to all the original signatories of the $100,000 promissory note, together with Profit Sharing Trust which assumed the indebtedness thereon, to begin making payments on the principal of that note.
When the defendants defaulted on their payment on the promissory notes, the plaintiffs brought suit seeking to recover on the two promissory notes and also sought recognition of the real estate mortgage executed in their favor.

PREFACE TO OUR DETERMINATION
The trial court admitted much testimony by both litigants which may have been classified as parol evidence. The plaintiffs objected in part to some of the defendants' evidence as being irrelevant; the defendants made similar objections to the placing into evidence of the buy/sell agreement entered into between Modular Quarters, Melyn Industries and the plaintiffs prior to the sale. However, neither set of litigants objected to the testimony as being parol. Louisiana's parol evidence rule is not substantive law, but a rule of evidence. Therefore inadmissible parol evidence admitted without objection may be considered by the trial court and the appellate court in reaching a decision. Newman v. Cary, 466 So.2d 774 (La.App. 4th Cir. 1985). Because there was no objection to the parole evidence, we need not address the question of whether the trial court's ruling was correct on this issue. Moreover, neither party asserts error in this regard.
The plaintiffs' position is that they did not know the limitation of liability clause regarding the defendants' liability was in the deed. Nevertheless, Mr. Dugas admitted that his signature on the cash deed was genuine and that he did not observe that the provision was in the authentic act. As evidence that it was not intended to be there, however, the plaintiffs ask us to look at the buy/sell agreement which made no reference to such a provision in the special conditions section. They also ask us to look at the release of Melyn Industries and Meadows, and the promissory note that Degeyter, Barras, Prados, and Savoy signednowhere in those documents were defendants' limited liability ever mentioned.
On the other hand, the defendants do not contest the trial court's finding that the plaintiffs proved their case on the promissory notes and the mortgage. Instead, the defendants contend that they can invoke the limitation of liability clause in the cash deed, and had the right to return the property as satisfaction for their personal liability. Primarily, they argue that Meadows, Degeyter, and Barras testified, without *197 contradiction from Dugas, that they discussed the inclusion of the limitation of liability clause with Dugas prior to the sale. In support of their position, the defendants ask us to look at Dugas' dealings with Ward Breaux, a prospective purchaser of the property before the defendants entered the picture, who wanted the right to return the property at anytime as full satisfaction of the indebtedness without incurring personal liability. They also ask us to view the plaintiffs' attorney, Mr. James Schwing, who allegedly confected the original language to meet the requirement of limited liability requested by Breaux, and the fact that almost that same language appears in the cash sale that Modular Quarters and Melyn Industries ultimately signed.

WHO MAY ASSERT THE LIMITATION OF LIABILITY DEFENSE
Before reaching the question of what the limitation of liability clause means, we must first decide who can invoke the clause, since only Modular Quarters and Melyn Industries signed the deed in question, and the limitation of liability does not appear in the promissory notes, the real estate mortgage or in the sale with assumption from Melyn Industries to Profit Sharing Trust.
Modular Quarters is the only defendant who was an original party to the sale, the promissory notes and the mortgage. Under these facts, we find LSA-R.S. 10:3-119, set out below in pertinent part, applicable:
"As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction,...."
Comment 3 to LSA-R.S. 10:3-119 provides:
"The section applies to negotiable instruments the ordinary rule that writings executed as a part of the same transaction are to be read together as a single agreement. As between the immediate parties a negotiable instrument is merely a contract, and is no exception to the principle that the courts will look to the entire contract in writing. Accordingly a note may be affected by ... any other relevant term in the separate writing. `May be modified or affected' does not mean that the separate agreement must necessarily be given effect. There is still room for construction of the writing as not intended to affect the instrument at all,...."
Thus, it is clear that as an immediate party to the contract Modular Quarters can invoke the liability limitation. Demaio v. Theriot, 343 So.2d 1143 (La.App. 3rd Cir. 1977), writ denied, 346 So.2d 218 (La.1977); Montesino v. Arguello, 433 So.2d 383 (La. App. 4th Cir.1983), writ denied, 438 So.2d 568 (La.1983).
We next turn our attention to Degeyter, Barras, Savoy, and Prados. These individuals were not identified as parties to the acquisition deed, and their signatures appear only on the two promissory notes. Without reaching the question of whether these individuals were parties to the contract of sale, for reasons which follow, we find that they, too, can invoke the limitation of liability clause because of their status as accommodation endorsers.
An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it. LSA-R.S. 10:3-415(1). Where a party never received proceeds of a loan for which a promissory note was given, that party who signed the promissory note as a co-maker, would be recognized as an accommodation endorser. Darby v. Doucet, 482 So.2d 986 (La.App. 3rd Cir. 1986). Moreover, co-makers who serve as accommodation endorsers for another party become solidary sureties for the principal debtor. Godeaux v. Godeaux, 488 So.2d 434 (La.App. 3rd Cir.1986), writ denied, 493 So.2d 636 (La.1986). If an accommodation endorser of a note is sued by one not a holder in due course, the endorser may raise any defense the maker might have raised. Bush Const. Co., Inc. v. Carr, 486 So.2d 183 (La.App. 1st Cir.1986), writ denied, 489 So.2d 1273 (La.1986); City Bank & Trust Co. v. White, 434 So.2d 1299 *198 (La.App. 3rd Cir.1983). The only exception to the rule enunciated in Bush and City Bank is that the surety (accommodation endorser) cannot assert the defenses of lack of capacity or discharge in bankruptcy of the principal obligor. LSA-C.C. Art. 3046.
In the case sub judice, it is clear that Barras, Savoy, Prados, and Degeyter, all stockholders of Modular Quarters, were accommodation endorsers for Modular Quarters, signing the promissory notes to provide the additional security required in the buy/sell agreement. Therefore, pursuant to the jurisprudence and statutory law cited hereinabove, they could assert the defense which Modular Quarters may have held as a result of the limitation of liability language contained in the sale document from the plaintiffs.
Finally, we look at whether Profit Sharing Trust can assert the limitation of liability defense. In the act of sale, Profit Sharing Trust assumed whatever obligations were imposed on Melyn Industries, an original signatory to the cash deed from the plaintiffs, in the two promissory notes and the real estate mortgage.
A person who, by agreement with the obligor, assumes the obligation of the latter is bound only to the extent of his assumption. The assuming obligor may raise any defense based on the contract by which the assumption was made. LSA-C.C. Art. 1822; Moriarty v. Weiss, 196 La. 34, 198 So. 643 (1940). Likewise, the assuming obligor may raise any defense based on the relationship between the original obligor and obligee. LSA-C.C. Art. 1824.
On this basis, we find that Profit Sharing Trust can assert the limitation of liability provision agreed to by Melyn Industries in the original sale from the plaintiffs.
Accordingly, we find that the trial court erred by failing to consider the disputed provision of the sale urged by defendants as a defense to plaintiffs' action on the promissory notes and real estate mortgage.

CONSTRUCTION OF DISPUTED PROVISION
Having concluded that the defendants may assert the disputed provision, we must now address the question of what the provision means. The disputed provision states:
"It is understood that the liability of purchaser is limited to the value of the land transferred herein regardless of any balance which may be due on the promissory notes executed in connection herewith."
The defendants contend that this provision permitted them to return the property to the plaintiffs and by doing so, this would cancel their liability on the promissory notes or the mortgage. The plaintiffs contend that they did not know what the provision meant.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. Art. 2046. The aim of contract interpretation is the discernment of a compatible meaning to all provisions of an agreement. Investors Assoc. Ltd. v. B.F. Trappey's Sons, 500 So.2d 909 (La. App. 3rd Cir.1987), writ denied, 502 So.2d 116 (La.1987). Louisiana contracts are interpreted in light of the common intent of the parties, and in light of all of the provisions, so that each provision is given the meaning suggested by the contract as a whole. LSA-C.C. Arts. 2045, 2050. In ascertaining the parties' common intentions to the contract, recourse must first be obtained by construing the contract or agreement as a whole; if that process is not determinative, then the next subject of inquiry is the discernment of the circumstances surrounding the parties at the time of contracting. Investors Assoc. Ltd., supra at 912. Contracts, subject to interpretation from the four corners without the necessity of extrinsic evidence, are interpreted as a matter of law. Id.
We first address the plaintiffs' contention that they did not know the meaning of the provision or that it was even in the sale of the immovable property. *199 The law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, but it holds them to the consequences, save in certain exceptional cases, in the same manner and to the same extent as though they had exercised those rights. Tweedel v. Brasseaux, 433 So.2d 133, 138 (La.1983), quoting Ray v. McLain, 106 La. 780, 31 So. 315 (1901). Looking at the sale instrument, in authentic form, the plaintiffs are presumed to have consented to its contents and to be bound by the provisions of the instrument since they signed it. Hoover v. Mid-South Exploration Co., Inc., 479 So.2d 551 (La.App. 1st Cir.1985); Action Finance Corporation v. Nichols, 180 So.2d 81 (La.App. 2nd Cir.1965).
Next, we look at the defendants' contention. Although the trial court did not base its decision on an interpretation of the provision quoted hereinabove, it nonetheless commented as follows:
"The language does not state that the defendant could return the property and owe nothing on the promissory note or the mortgage. It was stipulated at trial that the property value was less than the amount of the mortgage [Dugas owed the Federal Land Bank] ... There was, however, no testimony as to what the value of the property was at the time of trial ... At trial, Mr. J.D. Dugas, plaintiff herein, stated that he had no understanding of the meaning of the above clause. The defendants testified that it was their understanding they could return the property at any time and be relieved of any further liability. The language in the clause relied upon by defendant does not say that they can return the property at any time."
We agree with the trial court that the disputed provision does not provide that the defendants can return the property at any time and owe nothing. Such a meaning would constitute an agreement by the plaintiffs in advance of default to accept a return of the property in satisfaction of their obligation, i.e., an agreement to accept a dation en paiement. See LSA-C.C. Arts. 2655 through 2659. The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due. LSA-C.C. Art. 2655; Slaton v. King, 30 So.2d 867 (La.App. 2nd Cir.1947), reversed on other grounds, 214 La. 89, 36 So.2d 648 (1948). See also Dunaway v. Spain, 493 So.2d 577, n. 1 579 (La.1986). There is nothing in the sale which indicates any assent by the plaintiffs to prospectively accept such an arrangement.
However, we do find that the disputed contract provision as worded has meaning. The words of the contract provision state that the purchasers' liability is limited to the value of the land, regardless of the amount owed on the promissory notes. Thus, unlike the "in rem" note or mortgage, see La. Nat. Bank of Baton Rouge v. O'Brien, 439 So.2d 552 (La.App. 1st Cir. 1983), writ denied, 443 So.2d 590 (La.1983), which stipulates that the mortgagor has no personal liability, the contract provision applicable in the case sub judice limits liability, but does not exclude it. Therefore in view of the testimony of Lynn Meadows, the representative of Melyn Industries, that the defendants felt that the property may have been overvalued in the sale, the provision provided them with some protection should they eventually be sued on their endorsements, as makers and accommodation endorsers, of the promissory notes.
In reaching this conclusion, the only question which surfaces relates to the value of the property: when did the property value attach to the limited liability and who was to value the property? The contract provides for neither.
LSA-C.C. Art. 2054 provides:
"When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose."
From the language of the disputed provision, we conclude that a contract provision of this kind implied that the limitation of *200 liability did not become operative until the plaintiffs sought to enforce liability on the promissory notes. In this regard, the promissory notes provided, in pertinent part:
"It is hereby agreed that if default be made in the payment of the principal sum herein above mentioned, or any installment thereof or any interest thereon, as above described, ... the entire amount of the principal of this note with all interest then accrued, shall, at the option of the holder or holders of this note, become and be due and collectible on the conditions as provided expressly in said mortgage, time being of the essence of this agreement. The makers, endorsers, guarantors and sureties hereby specifically agree that they are liable jointly, severallly and in solido unto the bearer of this note for the full amount of principal, interest, attorney's fees and costs whatsoever."
The real estate mortgage likewise provides, in pertinent part:
"It is agreed and understood that ... in case of non-payment of the mortgage notes, or any of the mortgage notes executed by the said mortgagor, or of any interest thereon, when due ... then ... the said mortgage note, or notes in principal and interest, attorney's fees and costs and all other indebtedness secured hereby shall, at the option of the holder of said mortgage note or notes, immediately become due and payable, anything to the contrary not withstanding."
Thus, we find that default on the notes by non-payment triggered the judicial enforceability of the promissory notes and mortgage. Impliedly, then, it was at such time that the parties' liabilities attached in accordance with the tenor of the agreements between them, including the limitation of liability provision at issue. Accordingly, we find that the value of the property at the time of default was controlling.
We now turn to the question of whose valuation was determinative. Louisiana jurisprudence provides that in a suit for the collection of a promissory note, the plaintiff's production of the note sued upon makes his case. Once the note is introduced into evidence, the burden of proof shifts to the defendant to establish the nonexistence, extinguishment or variance in payment of the obligation. Merchants Tr. & Sav. Bank v. Don's Intern., 538 So.2d 1060 (La.App. 4th Cir.1989). Since the parties did not make an express provision for determining the value of the property, then they impliedly consented to be bound by the valuation determination to be made by the trial court. Cf. LSA-C.C. Art. 1974 (which provides that if the parties to a contract fail to name a person to make a determination of the quantity of a contractual object, the quantity may be determined by the court). Therefore, we conclude that the disputed clause further implies that the value of the property was to be made ordinarily as a matter of proof, subject to rebuttal by the plaintiffs; the ultimate determination of value being made by the trial court after considering the evidence presented.
Both sets of litigants urge us to construe any ambiguities against the other. Since we find that the questions surrounding the issue of valuation were not provided for, rather than being ambiguous, we need not construe the absence of provisions against either set of litigants.
In our resolution of the interpretation of the contractual provision limiting defendants' liability, we stated that there was no proof in the trial court of the value of the land at the time of defendants' default. Because of the absence of proof on this issue, we find it necessary to remand this case to the trial court for the taking of testimony to determine the value of the property at the time of default.

REFORMATION OF THE DEED
Defendants next contend that should we conclude that the contract provision does not give them the right to return the property and owe nothing, then we should reform the instrument to reflect such an intention.
In Brabham v. Harper, 485 So.2d 231, 233 (La.App. 3rd Cir.1986), we stated:

*201 "An action to reform a written instrument is an equitable remedy, and it lies only to correct mistakes or errors in the written instrument when such instrument, as written, does not express the true contract or agreement of the parties. Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948). It is a personal action, even when applied to real estate, and the burden of proof rests on the one seeking reformation of the instrument to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Fontenot v. Lewis 215 So.2d 161 (La. App. 3rd Cir.1968) (emphasis added); Catyb v. Deville, 246 So.2d 41 (La.App. 3rd Cir.1971)."
This issue is not properly before us. The defendants have not sought a reformation of the contract of sale, an equitable remedy, in any of their pleadings and did not urge this argument in the trial court. Therefore, we find that defendants' attempt to inject this issue into these proceedings for the first time on appeal is clearly improper. See Fontana v. Zurich Ins. Co., 430 So.2d 718 (La.App. 2nd Cir. 1983), writ denied, 438 So.2d 569 (La.1983). Moreover, we find no clear and convincing proof by the defendants that there was mutual error in the confection of the sale instrument. Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940).

VITIATION OF DEFENDANTS' CONSENT
In defendants' amended and supplemental answer, they urged the affirmative defense of error, mistake, and lack of failure of cause and sought a judicial declaration that the sale from the plaintiffs to Modular Quarters and Melyn Industries was a nullity. They argue that unless there was a provision which allowed them to surrender the property and relieve themselves of any liability, they would not have purchased the property.
Consent may be vitiated by error, fraud, or duress. LSA-C.C. Art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. Art. 1949. Error may concern cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded as a cause of the obligation. LSA-C.C. Art. 1950.
Since a contract is an agreement by two or more parties creating, modifying, or extinguishing obligations, LSA-C.C. Art. 1906, it is implicitly understood that only parties to a contract may assert its nullity by virtue of a defect in consent. Thus, in the case sub judice, only Modular Quarters as an original signatory, and Profit Sharing Trust, standing in the shoes of the original signatory, may assert the nullity of the sale because of lack of consent.
In the present case, we have found that the contract provides for a limitation of liability, but not a release from all liability. The question we are thus presented with is, whether in the absence of such a provision, was there error to such an extent that it vitiated the parties' consent?
A party who asserts that an obligation is null must prove the facts or acts giving rise to the nullity by a preponderance of the evidence. LSA-C.C. Art. 1831; Cf. Bordlee v. Pat's Construction Company, Inc., 316 So.2d 16 (La.App. 4th Cir. 1975).
After carefully reviewing the record before us, we cannot say that there was proof by a preponderance of the evidence that without a complete release of liability the corporate parties would not have purchased the land. The evidence of Degeyter and Meadows' signatures on the promissory notes and the mortgage on behalf of the corporations, without any provision for their release, as allegedly intended, certainly belies their argument. With our resolution of the contract provision in favor of some limitation of liability, we cannot *202 say that there was such a lack of consent that no agreement was confected between the plaintiffs, Modular Quarters, and Melyn Industries, regarding the sale of the property. Therefore, we find no merit to the contention that the original sale was null for lack of consent.

PLAINTIFFS' FAILURE TO PERFORM
The defendants last argument is that they should be relieved of their obligation to the plaintiffs because the plaintiffs testified that they have not made any payments to Federal Land Bank since 1985.
The act of sale from the plaintiffs to Modular Quarters and Melyn Industries provides:
"The parties acknowledge that the property being purchased by purchaser is currently subject to that certain Act of Mortgage recorded in Amortization Book 5, at folio 269, under Entry No. 733 of the records of the Clerk of Court, Iberia Parish, Louisiana, said mortgage having been granted by vendor to secure its loan with the Federal Land Bank in New Orleans which loan bears no. 0240542-1-1, and is more fully described in the said mortgage. It is specifically agreed by the parties that the property is being purchased subject to said mortgage. Vendor agrees to be responsible for the debt which is secured by the above described Federal Land Bank Mortgage and vendor specifically agrees to make timely annual payments due to the Federal Land Bank in New Orleans under the aforementioned loan, and to furnish purchaser annually with a receipt reflecting payment thereof."
We find no merit to the defendants' contention. After carefully reviewing the record, it is clear that the defendants did not condition payment of their promissory notes to the plaintiffs on obtaining a receipt evidencing the plaintiffs payment to the Federal Land Bank. In the absence of such an agreement, we cannot say that the defendants should have been relieved of their obligations to the plaintiffs on the promissory notes and the mortgage executed by them.

PLAINTIFFS' ANSWER TO THE APPEAL
The plaintiffs answered defendants' appeal, asking us to nullify an earlier judgment of the trial court, the one dated June 3, 1988, which was unresponsive to the trial court's findings, since a judgment responsive to the trial court's findings was later signed on a motion for a new trial on July 25, 1988.
Even though we are reversing the July 25, 1988, judgment of the trial court in part and remanding the matter for the taking of additional evidence, we agree that the trial court should have cancelled the earlier erroneous judgment. Accordingly, we shall also order that the judgment of June 3, 1988, be annulled and set aside, and that its recordation in MOB A-543, at folio 582 (Entry No. 88-3897) be cancelled.
For the foregoing reasons, it is ordered, adjudged, and decreed that the judgment of the trial court of July 25, 1988, is affirmed to the extent that it found Modular Quarters, Inc., the Profit Sharing Trust for Employees of Modular Quarters, Inc., Kenneth J. Barras, Jefferson Prados, Robert J. Savoy, and Larry C. Degeyter liable in solido to James D. Dugas and Patricia Broussard Dugas and recognized the mortgage in favor of James D. Dugas and Patricia Broussard Dugas recorded under Act. No. 80-3649. It is further ordered, adjudged, and decreed that the portion of the judgment which specified the amount owed to the plaintiffs under the two promissory notes is vacated and set aside, and this matter is remanded to the trial court for the taking of evidence to determine the value of the mortgaged property at the time of defendants' default. It is further ordered, adjudged, and decreed that the judgment of June 3, 1988, in favor of James D. Dugas and Patricia Broussard Dugas and against the defendants, Modular Quarters, Inc., the Profit Sharing Trust for Employees of Modular Quarters, Inc., Kenneth J. Barras, Jefferson Prados, Robert J. Savoy, and Larry C. Degeyter recorded in MOB A-543 *203 at Folio 582 of the Parish of Iberia is cancelled and set aside.
Costs of trial are to await final determination of this matter. Costs of this appeal are assessed equally between the plaintiffs and defendants.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.