NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-164

SUCCESSION OF HESTER B. WILSON

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 26,730
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

AFFIRMED.

Gregory B. Upton
Leslie E. Halle
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, Louisiana 71307-6118
(318) 445-6471
Counsel for Appellee:
        Succession of Hester B. Wilson

Brian K. Thompson
Jessica Firment
Law Offices of Brian K. Thompson, A.P.L.C.
2915 Jackson Street
Alexandria, Louisiana 71301
(318) 473-0052
Counsel for Appellant:
        Roscoe Wilson

**KEATY, Judge.**

Roscoe Wilson (Roscoe), an intestate heir of Hester B. Wilson (decedent), appeals from a judgment in favor of the Succession of Hester B. Wilson (the Succession) granting its motion to enforce compromise agreement. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The decedent died on May 4, 2011. She was survived by her two sons, Roscoe and J. Michael Wilson (Michael).[1] On October 21, 2011, Michael and his son, Clifton Carl Wilson, Jr., (Cliff), instituted this suit by filing a petition to present purported testament, for declaration of invalidity, and for appointment of administrator. The trial court signed an order on October 27, 2011, invalidating the purported January 25, 2007 notarial testament of the decedent, appointing Cliff as administrator of the Succession after completion of the formalities normally associated therewith, and ordering Cliff to prepare and file a sworn detailed descriptive list of the assets and debts of the Succession.

The Succession filed the detailed descriptive list on May 8, 2012. Listed therein as an asset of the Succession was an April 2001 loan due from Roscoe in the amount of $151,000. Approximately two months later, the Succession filed a motion to enforce compromise agreement. According to the motion, a verbal agreement had been reached on May 17, 2012, between the Succession and Roscoe's then-attorney, John Geiger, which was later confirmed by email correspondence between them dated May 24, 2012. However, on May 29, 2012, before the settlement documents had been executed, Roscoe informed the attorneys

---

[1] The decedent had a third son, Clifton Carl Wilson, Jr., (Clifton) who predeceased her leaving no children. The decedent's husband, Clifton Carl Wilson, Sr., also predeceased her.

for the Succession that he had fired Mr. Geiger and was in the process of hiring new counsel.

Several weeks later, Roscoe's newly-hired-attorney filed a memorandum in opposition to the motion to enforce compromise agreement. Following a hearing, the trial court took the matter under advisement. Judgment was rendered on September 24, 2012, granting the motion and enforcing the compromise agreement. In conjunction therewith, the trial court ordered Roscoe to execute a receipt for inheritance, approval of accounts, release and indemnification agreement; a petition for possession and discharge of administrator; and an act of transfer.

Roscoe now appeals, asserting that the trial court was clearly wrong: 1) in enforcing the alleged compromise agreement between the parties because it was not reduced to a writing, or reciprocal writings, signed by both parties; 2) in allowing parol evidence as proof of the agreement between the parties; and 3) in finding that Roscoe's attorney had the authority to bind Roscoe in a compromise agreement with the Succession.

## DISCUSSION

The two-part test for the appellate review of a factual finding is 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. If a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Mixed questions of law and fact are also subject to the manifest error standard of review.

*Dozier v. Rhodus*, 08-1813, p. 8 (La.App. 1 Cir. 5/5/09), 17 So.2d 402, 407, *writ denied*, 09-1647 (La. 10/30/09), 21 So.3d 294

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation

2

or other legal relationship." La.Civ.Code art. 3071. "A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." La.Civ.Code art. 3072. "The purpose of a compromise, therefore, is to prevent or to put an end to litigation. The essential elements of a compromise are (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties in adjustment of their differences." *Rivett v. State Farm Fire and Cas. Co.*, 508 So.2d 1356, 1359 (La.1987).

> [T]he requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071, has been perfected.

*Felder v. Georgia Pac. Corp.*, 405 So.2d 521, 523-24 (La.1981).

The only witness to testify at the hearing on the Succession's motion to enforce compromise agreement was Leslie Halle, an attorney who represented the Succession. Roscoe failed to offer any testimony or evidence at the hearing. Ms. Halle testified that she and Mr. Geiger had engaged in settlement negotiations regarding Roscoe's share of the Succession and the debt that he allegedly owed to it. On May 5, 2012, she sent a letter to Mr. Geiger enclosing the detailed descriptive list and stating the Succession's position that the $151,000 distributed to Roscoe in April 2001 was a loan which became due upon the death of the decedent.[2] In the letter, the Succession offered to settle the matter if Roscoe would

---

[2] The May 7, 2012 letter from Ms. Halle to Mr. Geiger was accepted into evidence as Movant 1.

3

accept $5,000 and execute a receipt and release and any documents necessary to close the Succession in exchange for the Succession's agreement to not pursue collection of the approximately $28,421 owed to it by Roscoe. Ms. Halle stated that Mr. Geiger called to inform her that Roscoe wanted to settle the Succession for $15,000. After discussing the matter with her client, she called Mr. Geiger and raised the settlement offer to $7,500. In response, Mr. Geiger told her that he "felt confident" that Roscoe would agree to settle the matter for $10,000. Ms. Halle then called Mr. Geiger to inform him that the Succession agreed to pay Roscoe $10,000 in exchange for his executing the appropriate documents to close the Succession, which she would prepare. Ms. Halle testified that there were four aspects to the agreed upon settlement. First, Roscoe would transfer the interest in a house he received from his father's succession to his brother Michael.[3] Second, Michael would receive all the remaining property belonging to the Succession. Third, the Succession administrator agreed to not pursue collection of the $28,000 debt Roscoe owed the estate. Finally, Roscoe would receive $10,000. In response to a question posed by the trial court as to whether Mr. Geiger told her that he had discussed the matter with Roscoe and that Roscoe had authorized him to accept the $10,000 settlement, Ms. Halle responded, "Yes, sir." She elaborated that she had received another call from Mr. Geiger later that day stating that Roscoe agreed to settle the matter for $10,000.

Ms. Halle testified that she sent Mr. Geiger an email on May 24, 2012, attaching a receipt and release, petition for possession and discharge of

---

[3] At the hearing, Ms. Halle referred to Roscoe's brother as "Mike."

4

administrator, and a judgment of possession.[4]  Later that day, she received an email from Mr. Geiger informing her that "the documents were fine," and that Roscoe would contact her to execute the documents after he reviewed the deed of transfer.[5] Ms. Halle testified that the deed of transfer was going to be a standard deed and that it could be a quit claim deed.  Ms. Halle stated that she sent Mr. Geiger another email the next morning requesting Roscoe's mailing address and marital status in order for her to complete the transfer documents.[6]  Later that day, she received a call from a man who identified himself as Roscoe Wilson.  He gave her the name of his wife and his address and asked her when the documents would be ready for him to sign.  Ms. Halle testified that she told Roscoe that she would contact him after the act of transfer had been reviewed by Mr. Geiger.  According to Ms. Halle, at no time in their May 25, 2012 conversation did Roscoe say that he had any disagreement with the documents.  The next week, Roscoe called to let her know that he had hired a new attorney.

*Assignment of Error Number 1*

Roscoe contends that the trial court erred in enforcing the alleged compromise agreement because it was not reduced to a writing, or reciprocal writings, signed by both parties evidencing their obligations under and their acquiescence to the alleged agreement.  More specifically, Roscoe claims that the documents attached to Ms. Halle's May 24, 2012 email do not clearly state that the Succession would not pursue collection of the $151,000 debt that he allegedly

---

[4] The May 24, 2012 email from Ms. Halle to Mr. Geiger, along with the attachments, was accepted into evidence as Movant 2.

[5] The May 24, 2012 email from Mr. Geiger to Ms. Halle was accepted into evidence as Movant 3.

[6] The May 25, 2012 email from Ms. Halle to Mr. Geiger concerning the transfer documents was accepted into evidence as Movant 4.

5

owed to it. He submits that the emails exchanged in this matter "contemplate further review and negotiation." Roscoe contends that because his signature was needed to complete the deed of transfer and because his attorney reserved the right to review the deed of transfer, the trial court should not have found that he had entered into a valid compromise agreement.

The Succession counters that it submitted a written offer to Roscoe, which his attorney accepted in writing. The Succession contends that the emails between the attorneys, along with the documents attached thereto, succinctly set forth the terms of the settlement agreement and each party's obligations under that agreement. With regard to Roscoe's argument that the settlement documents did not state that the Succession would not seek collection of the $151,000 debt, the Succession points out the settlement documents clearly state that once Roscoe receives $10,000 as his share of the Succession and Michael receives the remaining assets in the Succession as well as the transfer of the ownership Roscoe has in the immovable property that he received in his father's succession, the administrator would be discharged and no longer entitled to seek collection of the debt that Roscoe formerly owed the Succession. Finally, the Succession submits that because the parties clearly agreed to the transfer of property from Roscoe to Michael, the terms of deed of transfer were not essential to the validity of the compromise agreement.

*Dozier*, 17 So.2d 402, involved a suit for partition brought by co-owners of land allegedly contaminated by a nearby industrial waste disposal facility. On the eve of trial, NPC Services Inc. (NPC), a company that had purchased all interests in the property except for that of one of the co-owners, requested that the trial court take the matter off the docket as a settlement had been reached. When that co-

6

owner later refused to complete the settlement, NPC filed a motion to enforce settlement. In affirming the trial court's grant of the motion, the appellate court noted:

> If it were necessary for the party to sign the writing that serves as proof of the agreement, often there would be no basis for enforcement, because generally the attorneys rather than the parties negotiate and contract settlement agreements. In fact, frequently the purpose of court intervention in enforcing a settlement agreement is to obtain the signature of a party who has met the contractual legal requirements but refuses to honor the agreement.

*Id.* at 408. The co-owner in *Dozier* also argued that the trial court erred in ordering him to execute documents exceeding the scope of the correspondence between the parties' attorneys, especially since he had reserved the right to approve the settlement deed and contract. The appellate court disagreed, finding that the trial court did not err in finding that the requirements for an enforceable compromise agreement had been met, noting that "[d]ocuments affecting . . . immovable property . . . will be considerably more intricate than an email." *Id.*

After review, we conclude that the trial court did not err in finding that the parties entered into a valid compromise agreement. When read together, the emails and documents exchanged between the attorneys for the Succession and Roscoe clearly outline the obligations owed by each of the parties along with the parties' mutual intent to put an end to their dispute. Further, that Roscoe's attorney reserved the right to review another document, i.e., the deed of transfer, does not change the fact that the parties had already agreed to all of the elements necessary to constitute a valid and enforceable settlement. Roscoe's first assignment of error lacks merit.

7

## Assignment of Error Number 2

Roscoe next contends that the trial court erred in allowing parol evidence, i.e., the testimony of Ms. Halle, as proof of the agreement between the parties. Citing La.Civ.Code art. 3073, he further contends that because the settlement involves a transfer of immovable property, the settlement agreement itself must be in the form of an authentic act or act under private signature. *See* La.Civ.Code art. 1839, governing the transfer of immovable property.

The Succession counters that the primary evidence of proof that the parties entered into a compromise agreement was the emails and attachments thereto exchanged between the parties. It further submits that while Ms. Halle's testimony did address the terms of the settlement, the bulk of her testimony focused on the negotiations between her and Mr. Geiger that led to the compromise agreement ultimately reached between them on behalf of their clients. The Succession points out that while Roscoe did object to Ms. Halle's testimony as being hearsay, he did not object to the testimony being inadmissible parol evidence and, thus, waived his right to challenge the admission of that evidence on appeal. Finally, the Succession concedes that an instrument transferring immovable property must meet the form requirements found in La.Civ.Code art. 1839. Nevertheless, citing *Dozier*, 17 So.3d 402, it contends that an agreement to transfer immovable property in the future does not have to be in authentic form or an act under private signature.

In *Dugas v. Modular Quarters, Inc.*, 561 So.2d 192, 196 (La.App. 3 Cir. 1990) (citation omitted), we observed:

> The trial court admitted much testimony by both litigants which may have been classified as parol evidence. . . . However, neither set of litigants objected to the testimony as being parol. Louisiana's parol

8

evidence rule is not substantive law, but a rule of evidence. Therefore inadmissible parol evidence admitted without objection may be considered by the trial court and the appellate court in reaching a decision. Because there was no objection to the parol evidence, we need not address the question of whether the trial court's ruling was correct on this issue.

We conclude that the trial court did not err in allowing the testimony of Ms. Halle as her testimony was not essential to its finding that the parties had entered into a valid compromise agreement. Further, to the extent her testimony touched on the terms of the settlement agreement, the trial court did not err in considering it since Roscoe did not object to its admission on the basis that it was parol evidence. Finally, like the first circuit held in *Dozier*, we conclude that "the legal requirements for an enforceable settlement agreement were met," despite the fact that agreement required that the co-owner would have to later sell his interest in the property at issue. *Dozier*, 17 So.3d at 410. There is no merit to Roscoe's second assignment of error.

## *Assignment of Error Number 3*

In his final assignment of error, Roscoe contends that the trial court erred in finding that his attorney had the authority to bind him in a compromise agreement with the Succession. While Roscoe concedes that he hired his former attorney, Mr. Geiger to represent him in this matter and to negotiate a settlement that was beneficial to him, he denies that he gave Mr. Geiger the express authority to bind him to a settlement agreement or that he ratified the acts of Mr. Geiger. Finally, Roscoe submits that the Succession's attorneys were not justified in relying on the apparent authority of Mr. Geiger to bind him to a settlement.

The Succession counters that the evidence supports the trial court's finding that Mr. Geiger had the authority to bind Roscoe in a valid compromise agreement.

9

In support of its arguments, the Succession submits that all the settlement negotiations in this matter were done through the attorneys. The Succession points to Ms. Halle's testimony that Mr. Geiger specifically told her that he had discussed the settlement with Roscoe and that Roscoe had agreed to it and that Roscoe had called her to see when he could come in and sign the settlement documents. Accordingly, it did not have to rely on Mr. Geiger's apparent authority to bind his client to the settlement. Finally, the Succession notes that, because Roscoe was represented by an attorney, it was prohibited from directly communicating with him.

After having reviewed the totality of the testimony and evidence, we cannot say that the trial court erred in its factual finding that Mr. Geiger had the authority to bind Roscoe into a valid compromise agreement with the Succession, especially given Ms. Halle's unrebutted testimony that Mr. Geiger told her that Roscoe had agreed to accept the settlement that was reached after a series of offers and counter offers. Roscoe's third assignment of error is without merit.

## DECREE

For the forgoing reasons, the judgment of the trial court granting the motion to enforce compromise agreement filed by the Succession of Hester B. Wilson against Roscoe Wilson is affirmed. All costs of this appeal are assessed against Roscoe Wilson.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.