DOUCET, Judge.
This appeal concerns interpretation of an indemnity clause contained in a contract of lease whereby lessee Louisiana Industries, Inc., third party defendant herein, agreed to indemnify lessor Missouri-Pacific Railroad Company, third party plaintiff, for any claim arising on the leased premises. From a judgment in favor of lessee, Missouri-Pacific appeals. We reverse and remand.
This cause originated after plaintiff, Odell McNeal, Sr., sustained personal injuries while working in the course and scope of his employment with Louisiana Industries, Inc. in Alexandria, Louisiana. On August 22, 1979, plaintiff was among a group of employees attempting to pull open the stuck door of a railroad hopper car[1] so as to allow the cement contained therein to fall into the unloading facilities constructed by Louisiana Industries, Inc. under the railroad track. The railroad car was owned by Illinois Central Gulf Railroad who furnished it to the carrier. Missouri-Pacific in turn delivered the car to Louisiana Industries. In attempting to open the jammed door, the Louisiana Industries employees employed a device known as a power puller or “come-along” which, through the use of pulleys and leverage, enables great force to be asserted in a pulling fashion. The device broke causing plaintiff the loss of an eye.
Plaintiff brought suit against the vendor of the come-along, Mid-State Supply Co., Inc., its manufacturer, Wyeth-Scott, Inc., and Missouri-Pacific Railroad Co., and later against Illinois Central Gulf Railroad.
Missouri-Pacific answered and filed a third-party demand against Louisiana Industries contending that under the terms of a lease agreement between the two, dated November 26, 1968, Louisiana Industries was required to defend, indemnify, and save harmless Missouri-Pacific from and against any liability, including attorney’s fees and costs arising out of an injury to persons on the premises. In response thereto Louisiana Industries filed a pleading styled “Exception, Motion for Summary Judgment, and Petition for Declaratory Judgment” which urged immunity under workmen’s compensation laws[2] and further alleged that upon the stipulations of fact and under the terms of the lease movant was entitled to summary judgment and a declaration of no liability. The pleading was supplemented by allegations that the indemnification portions of the lease were adhesionary and contrary to public policy. Louisiana Industries prayed that the matter be tried in preference to the main demand.
Upon trial of the aforementioned pleading Louisiana Industries sought to introduce evidence of prior negotiations of the parties relative to the clause in question. Missouri-Pacific objected. The trial judge admitted the extrinsic documents “for the purpose for which they are intended and that is to show, if I understood you correctly .. . the indemnification agreement was forced upon L. I. due to the fact that Missouri-Pacific was the only source available for this particular service.” Nevertheless, the trial judge considered the extrinsic evidence “most significant” in determining the scope of indemnity provided rather than its relevance to the issue of whether the con *570 tract was adhesionary. He concluded that the lease agreement indemnified Missouri-Pacific for damages occasioned by the operation of the underground hopper facilities, and did not indemnify them for any damages caused by their own neglect. Accordingly, the demands of the third-party plaintiff were denied. Thereafter, a petition and order for devolutive appeal were filed by Missouri-Pacific.
The remainder of the case was subsequently settled, with reservation to Missouri-Pacific to pursue its indemnity recourse. Thus the liability of the manufacturer and vendor of the power puller is not at issue, nor is the liability of the owner and furnish-er of the railroad car at issue. The only issue remaining is the effect to be given the indemnity clauses in the parties’ lease agreement.
Section 3(a) of the lease agreement provides in pertinent part:
Lessee shall defend, indemnify and save harmless Carrier from and against any and all liability, judgments, outlays, expenses, including attorneys’ fees and costs, soever, consequent on injury to or death of persons; including among others, the Lessee, Lessee’s agents, servants and employees, as well as the agents, servants and employes of Carrier, and loss or destruction of or damage to property of whatsoever kind and to whomsoever belonging, in any manner caused by or resulting from, or incident to, the construction, existence, maintenance, use or operation of said facilities under said track, or the operation of engines, cars or trains upon or over said track and said facilities thereunder, or resulting from or growing out of any failure of Lessee to comply with or perform any of the obligations, terms, conditions or provisions on Lessee’s part to be complied with or performed hereunder, and whether any such injury to or death of persons or loss or destruction of or damage to property shall be caused or contributed to by the negligence of Carrier or otherwise.
An additional indemnity provision is found in Section 4(g):
(g) to indemnify and hold harmless Carrier against all claims, demands, suits or actions arising out of injury to or death of any person, or loss of or damage to any property, while on or about Premises, when such injury, death, loss or damage results from any act or omission of Lessee or of Lessee’s agents, servants or employes; and except as may be otherwise provided in this agreement, if any claim or liability due to some other cause than fire or flood shall result from the joint or concurring negligence of both parties hereto it shall be borne by them equally.
The law applicable to such an indemnity agreement was set forth by the Louisiana Supreme Court in Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977), as follows:
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms. Lee v. Allied Chemical Corp., [331 So.2d 608 (La.App.1976) ] supra; Strickland v. Nutt, 264 So.2d 317 (La.App. 1st Cir.), cert. denied, 262 La. 1124, 266 So.2d 432 (1972); Elephant, Inc. v. Hartford Accident & Indemnity Co., 216 So.2d 837 (La.App. 1st Cir. 1968), on remand, 239 So.2d 692 (La.App. 1st Cir. 1970); Arnold v. Stupp Corp., 205 So.2d 797 (La.App. 1st Cir. 1967); Jennings v. Ralston Purina Co., 201 So.2d 168 (La. App. 2d Cir.), cert. denied, 251 La. 215, 203 So.2d 554 (1967).
That indemnity agreements are to be strictly construed does not mean that such clauses are to be disregarded; the agreement must be given the effect intended by the parties. LSA-C.C. Art. 1901. Strict construction does not mandate a nugatory interpretation, since, when a clause is susceptible of two interpretations, it must be considered in that sense in which it may have some effect. LSA-C.C. Art. 1951.
*571 Furthermore, all clauses of a contract should be interpreted the one by the other, giving to each the sense that results from the entire agreement. LSA-C.C. Art. 1955.
Applying the law set forth above to the indemnity agreement involved, it becomes clear that the construction imposed by the trial judge was erroneous.
Section 3(a), also known as the Industrial Track Agreement, provides in the broadest permissable terms that the lessee (Louisiana Industries) shall defend, indemnify and save harmless, the carrier (Missouri-Pacific) from any and all liability consequent on injury to persons, including specifically lessee’s employees, caused by or resulting from or incident to, the construction, existence, maintenance, use or operation of said facilities under said track, or the operation of engines, cars or trains upon or over said track and said facilities thereunder, whether caused or contributed to by the negligence of carrier. Undisputed is that the accident involved occurred when the lessee’s employee, while on lessee’s premises, attempted to open a car above the unloading facility.
Section 4(g), which pertains to the entire premises leased, provides that lessee shall indemnify the carrier for injuries occasioned by the neglect of lessee or its agents or servants; provided however that if liability arises from the joint or concurring negligence of both parties, the cost thereof shall be borne equally between the parties.
We conclude that the clear intent of the parties was to provide indemnity under one of the aforesaid provisions.
Whether appellee’s liability falls under Section 3(a) or 4(g) must be determined upon trial on the merits whereat fault and the circumstances incident thereto will be determined.
In reaching this conclusion we note that we are not dealing with an ordinary lease agreement with an indemnity clause. The record reflects that the agreement was the result of extensive negotiations between parties of comparable business expertise and equivalent bargaining power and was not a contract of adhesion. Appellee made a calculated business decision to oblige itself to the terms agreed upon. That contract leads to no absurd consequences. The corporate leasee was in a superior position to control the risks inherent in its enterprise due to its control and supervision of the property. The unloading facilities were placed upon the leased premises for the convenience of the lessee whereas the benefit to the railroad was marginal. Conversely, the deliverer of the hopper has a limited opportunity between receipt and forward to inspect the filled carload for defects. Admittedly a different result might obtain if the case were decided according to tort principles inasmuch as a dispatcher filling a hopper could more readily inspect the oper-ability of the release door prior to the increase of opposing force. Stated otherwise, the only way to ascertain whether the door of a hopper is functioning properly is to open it, therefore every carrier could not open the door and still forward the contents. However, this is not a case of tort, intentional or otherwise, but of contract. The parties have specified for the allocation of risk and their agreement has the effect of law upon them. LSA-C.C. Art. 1945.
With respect to the extrinsic evidence introduced, we find that, although admission of the documents relative to prior negotiations between the parties was proper as to the question of adhesion, its consideration in determining the scope of the indemnity agreement was improper. LSA-C.C. Art. 2276 states: “Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.” Where the contract exhibits no uncertainty or ambiguity as to the nature, object and extent of the parties’ agreement, as here, Art. 2276 controls, and it is presumed that the writing expresses the true and complete undertaking of the parties.
For the reasons assigned, the judgment appealed from is reversed and the case is remanded to the trial court for further pro *572 ceedings consistent with this opinion. Costs taxed to appellee.
REVERSED AND REMANDED.

. A freight car with a funnel-shaped floor sloping to one or more hinged doors for discharging bulk materials (e.g., coal, grain, cement).

. Uncontested on appeal is that Louisiana Industries’ workmen’s compensation immunity does not extend to such contractual committments. See Fontenot v. Monsanto Co., 363 So.2d 1309 (La.App. 4th Cir. 1978).