595 So.2d 395 (1992)
Dru Ann DeWOODY, Individually and as Natural Tutrix of the Minors, Caleb DeWoody and Jared DeWoody, Plaintiffs,
v.
CITGO PETROLEUM CORPORATION and Fred Bruno, et al., Defendants Third Party PlaintiffsAppellants,
Lake Charles Electric Co., Inc., Third Party DefendantAppellee.
No. 90-963.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
*396 Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, for plaintiffs.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Charles N. Harper, Lake Charles, for Citgo Petroleum Corp.
Thomas Sanders, Lake Charles, Jeansonne & Briney, Pat Briney, Lafayette, for appellees.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
DOMENGEAUX, Chief Judge.
In this wrongful death action, defendant Citgo Petroleum Corporation appeals the summary judgment dismissing its claim for contractual indemnity against Lake Charles Electric Company, Inc. For the following reasons, we reverse.
In January of 1986, Lake Charles Electric contracted with Citgo to perform electrical maintenance services at Citgo's refinery in Lake Charles, Louisiana. On February 5, 1988, Stephen DeWoody, an employee of Lake Charles Electric, was killed while working in the course and scope of his employment at the Citgo refinery.
DeWoody's widow filed suit against Citgo and Fred Bruno, a Citgo supervisor, as well as the manufacturer and the vendor of certain equipment alleged to be defective. Citgo then filed a third party demand against Lake Charles Electric seeking contractual indemnity pursuant to the maintenance contract of January of 1986. Lake Charles Electric sought summary judgment on this demand contending that any indemnity owed was limited to the amount of insurance required by the contract. The trial court granted this motion and dismissed Citgo's third party demand with prejudice.
The initial contract between Citgo and Lake Charles Electric contained the following clause requiring Lake Charles Electric to procure certain insurance coverage:
(12)(d) Contractor shall provide the following insurance for Contractor's operations extended to protect the Company, its co-owners and joint venturers during the term of this agreement.
(3) Comprehensive General Liability insurance covering all services performed under this Agreement, including coverage for liability assumed in this Agreement, not less than $1,000,000.00 per occurrence;
The contract contained an initial term of one year, from January 1, 1986 through December 13, 1986. After the expiration of this term, the parties consistently renewed the agreement so that the contract was in effect on the date of DeWoody's death in February of 1988. The change order dated February 11, 1987, which renewed the agreement from March 1, 1987 through May 30, 1987, contained the following indemnity provision:

Indemnification: Contractor agrees to indemnify fully, hold harmless and defend Citgo Petroleum Corporation, its parent, subsidiaries and affiliates and its and their agents, officers, directors, employees, *397 representatives, successors and assigns, from and against all Damages (as hereinafter defined) arising out of or in any way connected with Contractor's performance of this contract, through negligence, strict or absolute liability, or otherwise wrongful acts or omissions. The term "Damages" shall mean any and all (i) obligations, (ii) liabilities, (iii) personal injuries (including, but not limited to, death of any person), (iv) damages to property, (v) penalties, (vi) actions, (vii) claims, (viii) law suits, (ix) judgments and (x) costs and expenses (including, but not limited to, attorney's fees) relating to the foregoing. This indemnity does not extend to the sole negligence of Citgo, its employees, agents, or collateral contractors.
The February 11, 1987 change order provided that this paragraph was to be incorporated into the original contract as paragraph (12)(F), and all subsequent contract renewals specifically referred to the indemnity provision.
On appeal, Citgo argues the trial court erred in concluding that no indemnity was owed beyond the required insurance. In response, Lake Charles Electric contends the agreement is unenforceable because the term "sole negligence," as used in the last sentence, is ambiguous and because the agreement does not state that Citgo is to be indemnified for its own negligence.
When a contract of indemnity makes no express provisions for indemnification against the consequences of the indemnitee's negligence, and an unequivocal intention to so indemnify cannot be found after interpreting each contractual provision in light of the whole contract and the general rules of contractual interpretation, the court will presume that the parties did not intend to hold the indemnitee harmless for such liability. Sovereign Insurance Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986); Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977). The intent to indemnify another for the other's negligence can be taken from the contract as a whole. Polozola v. Garlock, Inc., 376 So.2d 1009 (La.App. 1st Cir.1979), writ denied, 379 So.2d 1103 (La.1980); Jennings v. Ralston Purina Co., 201 So.2d 168 (La.App. 2d Cir.1967), writs denied, 203 So.2d 554 (La. 1967).
According to the terms of the agreement, Lake Charles Electric agreed to indemnify and hold Citgo harmless from "all Damages (as hereinafter defined) arising out of or in any way connected with the contractor's performance of this contract..." "Damages" was later defined to include "any and all ... (vi) actions, (vii) claims, (viii) law suits, (ix) judgments ... relating to the foregoing." The one exception where indemnity would not be owed is in the case of Citgo's "sole negligence." We must disagree with appellee's argument that the term "sole negligence" as used here is ambiguous. The most reasonable construction of this provision is that the parties intended to exclude indemnity in those instances where Citgo's negligence is found to be the only cause of the incident giving rise to the indemnity obligation. The words of the contract are clear and explicit, and other indemnity agreements have been interpreted to reach the same result. See, for example, Smith v. Shell Oil Co., 746 F.2d 1087 (5th Cir.1984).
We also find that the language of the agreement, when viewed as a whole, is broad enough to encompass the negligence of the indemnitee, subject to the one narrow exception where the indemnitee's negligence is found to be the sole cause of the accident. Indeed, it is the presence of this exclusion that convinces us the parties intended that indemnity would be owed upon a finding of concurrent fault of the indemnitee or if the indemnitee is exonerated from fault. See Smith; Monson v. Shell Oil Co., 412 F.2d 294 (5th Cir.1969).
We now turn to the question of whether the indemnity obligation is limited to the insurance coverage required by the contract. After reviewing the documents in question, we find the indemnity obligation is independent of the obligation to procure insurance. We base this conclusion on the broad terms of the indemnity provision as well as the actions of the parties. The initial agreement contained only the requirement that Lake Charles Electric obtain insurance coverage in a minimum stated amount. The parties later amended *398 the contract to incorporate the indemnity provision, which covers "all damages" as defined therein. We find no intention to limit Lake Charles Electric's liability under the contract to the amount of the required insurance coverage. The indemnity provision, which contains no limit on the amount of damages covered, was added at a later date, presumably after insurance had already been procured. Thus, the instant case is distinguishable from Dickerson v. Continental Oil Co., 449 F.2d 1209 (5th Cir.1971), cert. denied, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972), where such an intention was found from the language of the contract.
For the above reasons, the judgment of the trial court dismissing the third party demand of Citgo Petroleum Corporation and Fred Bruno is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
Costs of this appeal are assessed to third party defendant-appellee, Lake Charles Electric Company, Inc.
REVERSED AND REMANDED.