614 So.2d 150 (1993)
MIGUEZ AND LECKBAND (A LAW PARTNERSHIP), Plaintiff-Appellant,
v.
HOLSTON'S AMBULANCE SERVICE, INC., Defendant-Appellee.
No. 92-68.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
James Miguez, Lake Charles, for plaintiff-appellant.
Louis B. Guidry, Lake Charles, for defendant-appellee.
Before YELVERTON, KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
Plaintiff, the law partnership of Miguez and Leckband, appeals an award by the trial court in a concursus proceeding which allocated $11,970 representing judgment proceeds of a prior suit between their client, James H. Cradeur, and Coastal Construction Company, to Holston Ambulance Service, Inc., Cradeur's creditor which was not party to the original suit. The trial court awarded Holston the $11,970 for services rendered in transporting Cradeur via *151 medi-vac helicopter and denied the law firm one-third of the amount of the recovery as provided for in its contingency fee contract with Cradeur.
On appeal, Miguez and Leckband contend that: 1) the trial court erred in finding this cause not a concursus proceeding; 2) the trial court erred in admitting the documents evidencing Cradeur's obligation to Holston into evidence; 3) Holston's cause of action against Cradeur had prescribed; and, 4) the trial court erred in its denial of payment of attorney's fees to Miguez and Leckband as per their contract with Cradeur.
Holston answered the appeal, requesting 12% interest and reasonable attorney's fees pursuant to their contract with Cradeur.
For the reasons which follow, we affirm the decision of the trial court as amended.

FACTS
On April 1, 1983, third-party defendant, Cradeur, sustained injuries while employed by Coastal. Holston transported Cradeur to Methodist Hospital in Houston, Texas from St. Patrick's Hospital in Lake Charles, Louisiana on April 27, 1983 via medi-vac helicopter, and returned him to Lake Charles via helicopter on May 5, 1983. The record evidences a total charge of $11,970 for both trips.
Originally, Cradeur and his wife filed petitions in consolidated cases for damages under general maritime law and the Jones Act against Coastal. Holston was never a party to the general maritime/Jones Act suits against Coastal through intervention or otherwise. The law firm of Miguez and Leckband represented the Cradeurs in their lawsuits against Coastal, replacing a series of attorneys who had previously represented them.
James Miguez testified that he and Coastal's attorney had stipulated in court as to the amount of the medical bills and other bills.[1] Although the parties stipulated to the amount of the outstanding medical expenses incurred by Cradeur, they left the determination of Coastal's liability for those expenses to the jury.
After a jury verdict in favor of Cradeur,[2] Coastal issued its check for $11,970 made payable to Cradeur, James Miguez, attorney, and Holston on October 12, 1988. Miguez and Leckband made demands upon Holston for a one-third percentage of the judgment proceeds, pursuant to their fee contract with Cradeur. After Holston refused to release one-third of the $11,970, the firm, on April 24, 1989, instituted the present concursus proceeding.
Holston answered and filed a third party-claim against Cradeur on the basis of the contracts that Cradeur entered into with Holston. Cradeur, represented by Miguez and Leckband, filed a peremptory exception of prescription arguing that the documents evidencing his obligation to Holston were promissory notes subject to the prescription of five years and thus the cause of action had prescribed. Judge L.E. Hawsey overruled the exception on the ground that the documents are contracts subject to the prescription of ten years.
After a trial on the merits, the trial court rendered judgment, signed on October 9, 1991, granting to Holston the entire sum of the $11,970 check issued by Coastal. From this judgment, the law firm of Miguez and Leckband appeals seeking a one-third contingency fee.

LAW FIRM'S ENTITLEMENT TO ATTORNEY'S FEES
First, we find that the contention of Miguez and Leckband that the trial court erred in holding this cause not a concursus proceeding lacks merit and relevancy. As the trial court recognized, the check was not deposited in the registry of the court on April 24, 1989. Rather, Judge Warren E. *152 Hood ordered the Clerk of Court to retain the check until further orders of the Court because Holston had failed to endorse the check. Louisiana jurisprudence, however, does not mandate a deposit of the contested funds into the registry of the court for the validity of a concursus proceeding. Succession of Miller v. Moss, 479 So.2d 1035 (La.App. 3rd Cir.1985), writ denied, 484 So.2d 135 (La.1986); LSA-C.C.P. Art. 4658.
The judgment contained the language "IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in concursus herein in favor of HOLSTON'S AMBULANCE SERVICE, INC...." This language indicates that despite the absence of a deposit of the funds into the registry of the court, the trial court nevertheless treated the cause as a concursus proceeding and relieved Coastal from the competing claims of the parties. Thus, we find no error.
Miguez and Leckband assert as its second assignment of error that the trial court erred in admitting into evidence two documents evidencing Cradeur's obligation to Holston in light of lay testimony contesting the authenticity of the signatures. Miguez and Leckband contend that the signatures on the documents are not Cradeur's. Cradeur testified that he never saw the documents in question, the signatures were not his, he would not have signed the document "Jimmy Cradeur" as the signature appears once, and the signatures on the two documents differ. Conversely, John Holston, Jr., on behalf of Holston, testified that he witnessed Cradeur sign the document dated April 27, 1983. He also testified that the signature of Cradeur did not appear to be misspelled.
Guy Scallon, a witness and former employee of Holston, testified that he did not remember whether Cradeur signed the documents. He did testify that Holston's procedure required the patient to sign if possible. If the patient was incapable of signing, the next of kin would sign, and in no case would a Holston representative sign on his behalf. The record does not indicate that Cradeur was incapable of signing. In fact, Holston testified that they accommodated Cradeur who was lying on his back by providing him with a clipboard in order to sign the slip.
We may not set aside a trial court's finding of fact in the absence of manifest or clear error. Rosell v. Esco, 549 So.2d 840 (La.1989). The trial court had before it the benefit of live witness testimony, the signatures, evidence of Cradeur's attorney's submission of the bill to Coastal, and Coastal's payment thereof. In light of witness testimony and our own review of the documents, we cannot find that the trial court manifestly erred in finding that the signature belonged to Cradeur and in admitting the documents as evidence of an obligation of Cradeur to Holston.
Thirdly, Miguez and Leckband propose that Holston's cause of action against Cradeur had prescribed. Language contained in the two documents signed by Cradeur reflect that the parties agreed that for consideration of $11,970, Holston would provide helicopter transportation to Cradeur:
"I have read and understood the above stated charges and hereby bind and obligate myself for payment of said charges and also agree to the terms as stated in this contract." (emphasis added).
A simple perusal of the documents, reveals that they are contracts for service subject to liberative prescription of 10 years. Westenberger v. State, Department of Education, 333 So.2d 264 (La.App. 1st Cir.1976); LSA-C.C. Arts. 1906 & 3499. Thus, the trial court properly overruled Cradeur's exception of prescription.
As its final assignment of error, Miguez and Leckband claim that the trial court erred in its denial of payment of attorney's fees to Miguez and Leckband. Although Holston does not contest the existence of a contingency fee agreement executed by Cradeur in favor of Miguez and Leckband, it claims that it is entitled to the entire amount of the $11,970 without deducting the attorney's fee. Conversely, the law firm claims that it is entitled to one-third of $11,970, the amount recovered by it on behalf of Cradeur prior to paying the *153 medi-vac expenses. Cradeur testified that he was not sure if the attorneys would obtain payment prior or subsequent to all of the bills being paid.
The contract does not expressly provide for the payment of medical expenses. Specifically, the contract provides in pertinent part:
"NOW, THEREFORE, the undersigned does hereby retain and employ ... MIGUEZ and LECKBAND, Attorneys at Law, ... to represent him, to collect any and all damages that might be due him, to negotiate, compromise, or file suit as he sees fit, against any person, persons, firm or corporation, and constituting him, his agent, for these purposes. As compensation for these services, the client irrevocably conveys unto the said attorney an interest in the subject matter of this claim, or suit, of one third (1/3) of any amount collected by compromise or settlement."
Holston contends that LSA-C.C. Arts. 2056 and 2057 require that we interpret the provision of the contract regarding attorney's fees against the law firm which prepared it. However, that principle applies only if we cannot otherwise resolve the doubtful provision. In other cases, we are bound to give legal effect to all written contracts according to the true intent of the parties, which we determine by the words of the contract when these are clear, explicit, and lead to no absurd consequences. American Waste v. Sanitary Landfill Com'n, 578 So.2d 541 (La.App. 3rd Cir.1991), writ denied, 581 So.2d 694 (La.1991).
We find that the contractual language in question evidences an intent for the law firm to recoup one-third attorneys fees out of the $11,970 which the law firm collected as special damages for the benefit of Cradeur for helicopter transportation services rendered by Holston.
We distinguish the present situation from that in Doucet v. Standard Supply & Hardware Company, 250 So.2d 549 (La. App. 3rd Cir.1971). This court in Doucet interpreted a contingency fee provision similar to that in the present case which assigned the attorney "`a lien of 30% of all amounts recovered by compromise or judgment.' " The plaintiff argued that no attorney's fee should be allowed on approximately $3,000 of the total award, which portion was for the compensation insurer. The Third Circuit found the contract provision vague and found that the trial court erred in allowing the 30% fee on the portion tendered as reimbursement to the compensation carrier. The Third Circuit reasoned that the provision that the fee will be 30% of "all amounts recovered" was subject to the interpretation that the fee would be based on all amounts recovered for the sole benefit of the plaintiff and not on amounts payable to the compensation carrier. The Third Circuit noted that "[h]ad the recovery in this instance been $3,000 (all of which would go to settle the subrogated claim), [the attorney's] interpretation of this contract would have [plaintiff] pay $900 for services which resulted in no recovery for [plaintiff]."
In Doucet, the amount recovered by the attorney was not for the benefit of the plaintiff, but was for reimbursement to the employer's worker's compensation carrier. Conversely, in the case sub judice, Cradeur personally obligated himself to pay for the medi-vac services rendered by Holston. Miguez and Leckband recovered for Cradeur the amount of the indebtedness he owed to Holston. As the beneficiary of the $11,970 recovered on his behalf by Miguez and Leckband, Cradeur is responsible for the attorney fees involved, which should be calculated based on the entirety of the $11,970 judgment proceeds. This result is consistent with Lazlo v. State Farm Fire & Cas. Co., 796 F.2d 807 (5th Cir.1986), in which the Fifth Circuit found that the insured's attorney was entitled to calculate the contingency fee on the amount recovered for the client, i.e., the entire principal amount of the judgment, rather than only on the amount of the judgment payable directly to the insured.
LSA-R.S. 9:5001 establishes a special privilege for attorneys for the amount of their fees on all judgments obtained by them, and on property recovered thereby.
*154 The privilege of an attorney primes the privilege set forth in LSA-R.S. 9:4752 for medical providers. Moore v. State for State Un. Med. Center, 596 So.2d 293 (La. App. 3rd Cir.1992), writ denied, 600 So.2d 667 (La.1992). The primacy of the attorney's privilege over that of medical providers supports our finding that the law firm should recoup its one-third contingency fee award for its services which eventually recovered $11,970. Likewise, the concept of equity and the jurisprudential doctrine of quantum meruit further buttress our finding.
Although Holston was never a party to the Cradeurs' seaman suit against Coastal and never obtained a judgment in its favor, it asserts that it should receive the $11,970 based on alleged assurances by the attorneys who, prior to Miguez and Leckband, handled Cradeur's case against Coastal. For instance, John DeRosier via letter conveyed to Holston that he would "take the necessary action against the responsible party in order to get this bill paid." Billy Ezell, prior to being sworn into the judiciary, advised Holston that "payment will be rendered upon settlement of this claim." Likewise, Charles Quienalty, prior to his elevation to the bench, assured Holston that "the outstanding account ... will be protected from the proceeds, if any, of any settlement and/or satisfaction of judgment upon conclusion of the case." We cannot construe these alleged assurances as binding contracts of surety or guaranty to pay Holston $11,970 regardless of the amount of recovery as to the previous attorneys much less as to Miguez and Leckband. As such, Holston was unreasonable in its alleged reliance on the statements by the previous attorneys and should have litigated to obtain a judgment in its favor based upon its contract with Cradeur.
In conclusion, the result suggested by Holston, that it receive the entire amount of recovery thus preempting remuneration to the law firm responsible for collection of the $11,970 is inappropriate. In fact, the only logical construction of the contract is to allow the law firm to recover its one-third contingency fee out of the $11,970.
Finally, Holston answered the appeal, asserting that its contracts signed by Cradeur which provide for 12% interest if not paid within 10 days and reasonable attorney's fees if placed in the hands of an attorney for collection entitle it to interest and attorney's fees in this concursus proceeding. However, because the amount Holston seeks surpasses the amount deposited with the registry of the court, an additional award for interest and attorney's fees is unwarranted. Chevron U.S.A., Inc. v. Oliver, 590 So.2d 1248 (La.App. 1st Cir. 1991), writ denied, 597 So.2d 1028 (La. 1992); Mary Adams & Associates v. Rosenblat, 539 So.2d 860 (La.App. 5th Cir. 1989).
For the above and foregoing reasons, we affirm the trial court's judgment subject to an amendment awarding one-third of the $11,970 to the law firm of Miguez and Leckband and the remainder to Holston Ambulance Service, Inc. We order Holston to endorse the check in the registry of the court, deny Holston interest and attorney's fees, and tax costs to Holston.
AFFIRMED AS AMENDED AND RENDERED.
NOTES
[1] The trial court allowed the record to remain open to admit the stipulation. Unfortunately, the portions of the record designated for this appeal do not contain the stipulation for our review.
[2] The record before us lacks a copy of the judgment in the Cradeurs' general maritime/Jones Act suit against Coastal but implies that the judgment condemned Coastal to pay the Cradeurs the $11,970 at issue in the present case.