hTHIBODEAUX, Judge.
Third party defendant, Aguillard Enterprises, appeals a summary judgment in favor of defendant-third party plaintiff, Lou Ana Foods, Inc., in connection with a service agreement entered into between those parties.
The service agreement contained various indemnity provisions for claims made by Aguillard employees while they were performing work at Lou Ana’s Opelousas location.
laAn Aguillard employee, Shawn McGol-drick, and his wife brought personal injury claims against Lou Ana for injuries suffered on Lou Ana’s premises while in the course and scope of his employment with Aguillard. Lou Ana filed a third party demand against Aguillard, asserting that it was entitled to indemnification for all losses, costs, and expenses associated with McGoldrick’s suit against Lou Ana. Lou Ana also requested that Aguillard tender insurance coverage to it according to the terms of the service agreement. The service agreement is reproduced in its entirety in Appendix “A.”
For the following reasons, we amend and affirm.

ISSUES

The issues before us are: 1) whether the trial judge properly applied the rules of contract interpretation in granting Lou Ana’s motion for summary judgment based upon the service agreement entered into by both parties; and, 2) whether the service agreement is an adhesionary contract, requiring a trial to determine whether Aguillard possessed bargaining power equal to that of Lou Ana and truly consented to the terms of the service agreement.

FACTS

On November 6, 1989, McGoldrick was employed by Aguillard as a welder’s helper at Lou Ana’s Opelousas, Louisiana facility. Pursuant to a service agreement entered into by Lou Ana and Aguillard dated May 18, 1989, Aguillard was performing services at that location when McGoldrick was allegedly injured. According to McGoldrick’s petition, he was injured while changing the tubing in a tank located on Lou Ana’s premises. McGol-drick and his wife filed suit against Lou Ana alleging that his injuries were the result of Lou Ana’s “sole, combined and/or ^solidary fault, vicarious liability, strict liability and/or negligence of Defendant(s) and/or joint tort-feasor(s) and/or his/its/their or as principals), employer(s), agent(s), representative(s), servant(s), employee(s), associate(s), parent(s), subsidiaryfies), lessor(s), lessee(s) and/or insurer(s).”
Aguillard claims that McGoldrick’s original petition alleged that only Lou Ana was at fault in causing his injuries and that the provisions of the service agreement do not provide indemnity for Lou Ana’s sole negligence. Additionally, it argues that the contract is ambiguous and should be interpreted against Lou Ana and that it is a contract of adhesion for which summary judgment is inappropriate.
Lou Ana contends that a reading of the service agreement in its entirety demon *458 strates that the clear intent of the parties was that Aguillard, as contractor, would bear the risk of injury to its employees while engaged in the performance of the terms of the service agreement at the Lou Ana Opel-ousas facility.

LAW AND DISCUSSION

I. Summary Judgment
Preliminarily, it should be noted that appellate courts review summary judgments de novo under the same criteria that governs the trial judge’s consideration of whether a summary judgment is appropriate. Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342 (La.1991). Consequently, no deference is given to any finding of fact made by a trial court.
II. Contract Interpretation
Aguillard contends that the McGoldricks’ petition alleges that Lou Ana was solely responsible for their injuries and that the service agreement does not provide for indemnity to Lou Ana due to injuries of Aguillard employees that occur due to Lou Ana’s sole negligence. Aguillard also claims that the trial judge erred in | interpreting the indemnification provisions of the service agreement in favor of Lou Ana. Aguillard further claims that it should be entitled to its day in court to determine if it consented to the terms of the service agreement because the agreement is Lou Ana’s standard printed form, prepared by Lou Ana for adherence by Aguillard. It is, therefore, a contract of adhesion and issues of fact exist as to whether Aguillard consented to its terms.
The law of contracts in Louisiana is very specific. The initial inquiry should be whether the words of the contract clearly and explicitly set forth the intent of the parties, which limits the interpretation of a contract to the internal language of the contract itself.
La.Civ.Code art. 2046 provides:
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.
Where the language of a contract is clear and unambiguous, it must be interpreted solely by reference to the four corners of that document. Weeks v. T.L. James & Co., Inc., 626 So.2d 420 (La.App. 3d Cir.1993), writ denied, 630 So.2d 794 (1994). The agreement in this case is the law between the parties, and no further interpretation may be made in search of the parties’ intent when the words of the contract are clear, explicit and lead to no absurd consequences and is not contrary to good morals or public policy. Id.; First National Bank of Commerce v. City of New Orleans, 555 So.2d 1345 (La.1990); Massachusetts Mutual Life Ins. Co. v. Nails, 549 So.2d 826 (La.1989). The courts are obligated to give legal effect to such contracts according to the true intent of the parties. Evangeline Parish School Board v. Energy Contracting Services, Inc., 617 So.2d 1259 (La.App. 3d Cir.), writ denied, 624 So.2d 1228 (La.1993). When a clause in a contract is clear and unambiguous, the letter |5of the clause should not be disregarded under the pretext of pursuing its spirit. Id. It will not be presumed by the court that parties make use of words in their contracts to which no meaning is attached by them. Weeks v. T.L. James & Co., Inc., supra. John Bailey Contractor, Inc. v. State, through DOTD, 439 So.2d 1055 (La.1983) teaches that parties to a contract will not be imputed with using language that is meaningless or without effect. When doubt exists as to the true sense of the words or phrases, each contract provision must be explained by reference to other provisions, words, or phrases used in the same contract. La.Civ.Code art. 2050; First National Bank of Commerce v. City of New Orleans, supra. When the contract is a standard form contract, a provision in a contract should be interpreted against the party who furnished its text only in cases of doubt that cannot be otherwise resolved. La.Civ.Code art. 2056; Miguez & Leckband v. Holston’s Ambulance Service, Inc., 614 So.2d 150 (La.App. 3d Cir.1993). Furthermore, in contracts of indemnity, the intent to indemnify another for its negligence can be taken from the contract as a whole. DeWoody v. Citgo Petroleum Corp., 595 So.2d 395 (La.App. 3d Cir.1992). Only when an unequivocal intention to so *459 indemnify cannot be found after interpreting each contractual provision in light of the whole contract and general rules of contractual interpretation, the court will presume that the parties did not intend to hold indem-nitee harmless for such liability. Id.
The supreme court in Perkins v. Rubicon, 563 So.2d 258 (La.1990) concludes that when the contract under consideration by the court is one of indemnity, whereby the indemnitee is indemnified against consequences of his or her own negligence, it is to be strictly construed, and the contract will not be construed to indemnify the indemnitee against losses resulting to him or her through the indemnitee’s negligent acts unless that intention is expressed in unequivocal terms. See also, May v. Acadiana Regional Airport, 562 So.2d 47 (La.App. 3d Cir.1990). However, just because indemnity agreements are to be strictly construed, it does not follow that such clauses are to be disregarded, but the agreement must be given the effect intended by the parties. McNeal v. Wyeth-Scott, Inc., 415 So.2d 568 (La.App. 3d Cir.1982). Furthermore, strict construction of indemnity agreements does not mandate nugatory interpretation since, when the clause is susceptible of two interpretations, it must be considered in that sense in which it may have some effect. Id.
Both Lou Ana and Aguillard argue that the explicit language of the contract supports their position. Applying the law as set forth above to the indemnity agreement involved, it becomes clear that the trial judge’s interpretation was correct. The indemnification provisions are located under section 7.0 of the agreement. Subparagraph 7.2(a) provides that Aguillard is to “indemnify ... Lou Ana from all losses, costs, and expenses ... — of alleged or actual legal liabilities ... for personal injuries, illnesses ... founded upon occurrences (including ... the concurrent negligence or strict liability of whatever nature of CONTRACTOR and LOU ANA)_ unless the ... injury, etc. are determined finally by the highest court of competent jurisdiction to be caused wholly by LOU ANA’S sole negligence.” (Emphasis theirs). Also, in section (b) of subparagraph 7.2, the agreement provides for the indemnification for claims of Aguillard’s employees. Essentially, (b) provides the same as (a) except that in the last sentence of (b) in the indented paragraph as to Aguillard being relieved of its obligation to indemnify Lou Ana in cases of Lou Ana’s sole negligence, it fails, at first glance, to explain what is meant by “sole negligence” as in 7.2(a), where it provides that indemnity is not owed by Aguillard if the “highest court of competent jurisdiction” determines the injury was caused by Lou Ana’s sole negligence.
|7Aguillard argues that under 7.2(a) and (b) of the service agreement, it is clearly not responsible for indemnification or defense of Lou Ana for claims against Lou Ana consisting of Lou Ana’s “sole negligence.” We agree with this argument. However, in 7.2(a), the contract requires the court to determine Lou Ana’s “sole negligence” as opposed to allegations in an injured employee’s petition. Aguillard attacks Lou Ana’s attempt to incorporate the stipulation of 7.2(a), regarding its release from the obligation to indemnify Lou Ana when the highest court determines that an injury was caused by Lou Ana’s sole negligence, with the sole negligence proviso of 7.2(b) which, as stated above, does not explain what is meant by “sole negligence.” Aguillard asserts that “sole negligence” of 7.2(b) is determined by the allegations of the employee’s petition. We disagree. It was not error for the trial judge and Lou Ana to construe the provisions of 7.2(a) and 7.2(b) of the indemnity section of the contract together. In fact, the rules of contractual interpretation requires the court to explain doubtful provisions with reference to other provisions, words or phrases used in the same contract. La.Civ.Code art. 2050; First National Bank of Commerce v. City of New Orleans, supra; Weeks v. T.L. James & Co., Inc., supra. Not only are 7.2(a) and (b) in the same contract, they appear in the same section of the contract. Only when an indemnity provision in a contract makes no express provision for indemnification against consequences of indem-nitee’s negligence, and an unequivocal intention to so indemnify cannot be found after interpreting each contractual provision in light of the whole contract and general rules *460 of contractual interpretation, may the court presume that the parties did not intend to hold indemnitee harmless for such liability. DeWoody v. Citgo Petroleum Corp., supra. We find that the language of the service agreement, when viewed as a whole, is specific enough to encompass the negligence of the indemnitee, subject to the onejgnarrow exception where the indemnitee’s negligence is found by the highest court of competent jurisdiction to be the sole cause of the accident.
III. Contract of Adhesion
Aguillard contends that the trial judge erred by failing to apply the defense of “contract of adhesion.” Golz v. Children’s Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976), broadly defines a contract of adhesion as, “a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection by the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms.” Aguillard suggests that the contract is an adhesion contract because the document it signed was prepared by Lou Ana. It is the sophistication and educational levels, and not the commerciality of the parties involved in the contract, that are the primary considerations in determining whether a contract is one of adhesion. In this ease, both parties are commercial enterprises and we could reasonably conclude that Aguillard was well aware of contracting practices and possessed the sophistication to enter into a service agreement. The contract in question is a three page instrument and the “sole negligence” clause in the indemnity section is not printed in small lettering, but is printed in the same size as the other lettering in the contract. Furthermore, Carroll Aguillard, president of Aguillard, signed the service agreement. The law does not compel people to read or to inform themselves of the contents of an instrument which they may choose to sign, but it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights. Dugas v. Modular Quarters, Inc., 561 So.2d 192 (La.App. 3d Cir.1990). In Billingsley v. Bach Energy Corp., 588 So.2d 786 (La.App. 2d Cir.1991), our brethren in the second circuit stated that a court cannot undermine a contract simply |9because it was a bad deal for one óf the parties. As unfortunate as the result may be for Aguillard due to the narrow exception to its indemnity obligation, we agree. This court recently stated in Weeks v. T.L. James & Co., Inc., supra, and in Evangeline Parish School Board v. Energy Contracting Services, Inc., supra, that a court is not to be concerned with the wisdom or folly of a contract and that it cannot annul or amend it simply to avoid supposed hardship arising therefrom. Its duty is confined to the ascertainment of the limits of the rights and obligations of the contracting parties as they have defined them for themselves. We find no error in the trial judge’s conclusion that the service agreement is not a contract of adhesion.
After a thorough review of the record and service agreement, we can find no reason why the indemnification clause with its attendant exception for Lou Ana’s sole negligence, should not be enforced. The clause appears in lettering that is the same size as the rest of the contract and in clear and unambiguous language. Likewise, paragraph 6.0 in its entirety, specifically subsection (e), pertaining to insurance coverage, is clear and unambiguous and states: “All of the Insurance Coverages required of CONTRACTOR ... except workmen’s compensation, shall name the Company, its divisions, affiliates, parent or subsidiary companies and any of their officers, directors, employees and agents as Additional Insureds.” (Emphasis added). Subsection (g) of 6.0 dictates that the insurance policies cannot be cancelled without 30 days prior notice to Lou Ana. Subsection (h) of 6.0 further requires Aguillard to furnish Lou Ana with proof that the insurances were obtained and remain in force. We agree that Aguillard failed to comply with the insurance requirements as clearly stated in the service agreement. Inasmuch as Lou Ana is exposed to potential liability in the McGol-dricks’ lawsuit for damages against it, for which it will neither be defended nor insured, we find that Aguillard breached its *461 110contract with Lou Ana and is liable for the damages arising therefrom. It is now impossible for Aguillard to “procure” insurance coverage for a past occurrence. To the extent that the trial court ordered this act, it was incorrect and the judgment will be amended accordingly.

CONCLUSION

Accordingly, we amend and affirm the trial court’s grant of Lou Ana’s motion for summary judgment. The judgment is amended to delete the requirement that Aguillard procure or tender insurance coverage because of the futility of such an act. However, because of Aguillard’s breach of its contractual obligations, it must now assume the insurer’s responsibility and provide the coverage agreed upon.
Third party defendant and appellant, Aguillard Enterprises, is assessed with the costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
*462 APPENDIX A
LOU ANA fine food, products from farmers, not chemists
[[Image here]]
No.:_00189
SERVICE AGREEMENT
Date: MAY 18, 1989
LOU ANA FOODS, INC,, a Louisiana corporation, herein referred to as “LOU ANA", and_
_AGUILLARD ENTERPRI SES_, herein referred to as "CONTRACTOR",
hereby agree as follows, for the performance by CONTRACTOR of certain services at LOU ANA'S Opelousas, Louisiana refinery.
For purposes of this Agreement, all benefits which inure to LOU ANA including but not limited to CONTRACTOR’S obligation to indemnify LOU ANA shall also inure to the benefit of any corporate entity which is a subsidiary of LOU ANA, a parent of LOU ANA, all companies affiliated with LOU ANA including all first tier and second tier, etc. subsidiaries of its parent, as well as the employees, officers, directors, agents, and representatives of each of such companies.
CONTRACTOR understands the character of these services and represents itself as competent to perform them, and having the authority and licenses to do business and perform the service in the area and state in which the work is to be performed.
1.0 Term
1.1 This Agreement shall take effect on MAY 18/ 1989___ and shall continue in effect for two (2) years or If later, until LOU ANA determines that services subject to the terms of this Agreement are completed and the work accepted. CONTRACTOR agrees that all representations and warranties both undertaken herein and under law shall continue beyond the acceptance by LOU ANA of the work performed by CONTRACTOR.
2.0 Services
2.1 CONTRACTOR agrees, when notified by LOU ANA to perform diligently and to execute competently all of the services described In the attached Exhibit "A" which is incorporated herein by reference. CONTRACTOR shall furnish all necessary equipment, supplies, superintendence, labor, tools, apparatus, machinery, transportation, and all other things for the completion of the work described on Exhibit "A". The parties agree that additional work to be performed by CONTRACTOR shall be governed by the terms and conditions of this Agreement once the scope of such work is embodied Into an exhibit marked "B", "C", "D”, etc. as the case may be, and on the condition that such exhibits are signed by both parties hereto. All such supplemental exhibits shall include the description of the work to be performed by CONTRACTOR and the contract compensation amount. Each supplemental exhibit shall include the method of contract compensation.
2.2 CONTRACTOR shall maintain ail equipment, etc. In good repair and serviceable condition at CONTRACTOR’S sole expense, while performing the services set forth on Exhibit “A”.
3.0 Time Schedule
3.1 CONTRACTOR shall begin work as LOU ANA directs and shall make every effort to complete the services promptly, consistent with LOU ANA’S needs.
4.0 Contract Compensation
The contract compensation amount shali be the amount agreed upon by the parties as set forth In LOU ANA's purchase order delivered to CONTRACTOR In connection with the work described on Exhibit A, B, C, etc. as the case may be. CONTRACTOR shall submit invoices as required by LOU ANA's purchase order. LOU ANA shall promptly pay such invoices on the condition that the work performed by CONTRACTOR with respect to which the invoice has been furnished has been completed In a workmanlike manner.
All provisions of this Agreement shall supercede and modify the terms and conditions set forth in the LOU ANA purchase order(s) furnished CONTRACTOR. Moreover, if there is any conflict between any provision of this Agreement and the terms and conditions of the purchase order, the provisions of the Agreement shall control.
5.0 Right to Audit
5.1 LOU ANA shall have the right to audit and inspect CONTRACTOR'S records. CONTRACTOR shall maintain adequate documents to satisfy LOU ANA’S audit needs, as directed by LOU ANA.
6.0 Insurance
In order to protect the Company against liability, loss, or expense arising from damage to property or injury or death of any person or persons arising out of or in any way connected with, Incident to, or resulting from the work or service provided for hereunder, CONTRACTOR shall at all times, during the progress of the work, at Its own expense, on forms and in reliable insurance companies, acceptable to LOU ANA, carry and maintain the following minimum insurance coverages:
(a) Workmen's Compensation Insurance in accordance with the statutory requirements of the state in which the work is to be performed, the state in which CONTRACTOR'S employees reside, and the state in which CONTRACTOR is domiciled; and the Employer's Liability Insurance with limits of not less than $J 00,000. These coverages must include: Occupational disease coverage, and a Borrowed Servant Endorsement to the effect that any claim against LOU ANA by an employee of CONTRACTOR, based on the doctrine of "Borrowed Servant" shall as respects the insurance provided by CONTRACTOR be treated as a claim arising under CONTRACTOR'S Policy.
*463 (b) Public Liability Insurance. For any contract work which is to be performed within the confines of the refinery, plant, dock area, process area operated by LOU ANA at Opelousas, Louisiana, any owned or leased premises (including offices) or which is to be performed at any other locations, owned or non-owned * Comprehensive/Commercial General Liability, or other acceptable policy form, with limits of not less than $1,000,0000 Combined Single Limit per occurrence for injuries to persons and property damage. This coverage shall include premises operations, producls/completed operations, independent contractors, contractual liability for all iiabilities-specifically covering this Agreement with LOU ANA, completed operations insurance, coverage for explosion, collapse, and underground property damage, and broad form property damage endorsement, including completed operations thereunder.
(c) Automobile Public Liability for both Bodily Inury and Property Damage covering all owned, hired and non-owned vehicles with limits of not less than $1,000,000 Combined Single Limit and contractural coverage extended thereunder.
(d) Contractor’s Equipment Insurance covering all of CONTRACTOR’S equipment and machinery (except that otherwise insured, such as automobiles and trucks) to be used in connection with the performance of the work specified in this agreement. This coverage requirement may be waived at the discretion of LOU ANA if CONTRACTOR self-insures the equipment and will waive all rights of recovery against LOU ANA in writing.
(e) All of the Insurance Coverages required of CONTRACTOR shall contain the provision that Underwriters and CONTRACTOR waive and will have no right of recovery or subrogation against LOU ANA, its divisions, affiliates, parent, or subsidiary companies and any of their officers, directors, employees and agents, it being the intention of the parties that the insurance so required shall protect both parties and be primary liable for any and all losses covered by the described insurance. All coverages, except workmen’s compensation, shall name the Company, its divisions, affiliates, parent or subsidiary companies and any of their oflicers, directors, employees and agents as Additional Insureds. Lastly, this insurance carried by the CONTRACTOR and any Subcontractor shall be considered primary insurance to any insurancé carried by such Additional Insureds for their own account.
(f) Any and alt deductibles in the above described Insurance Policies shall be assumed by, for the account of, and at the sole risk of CONTRACTOR.
(g) Ail policies providing coverage hereunder shall contain provisions that no cancellation or material changes in the policy shall become effective, except on thirty (30) days prior written notice thereof, to Lou Ana Foods, Inc., P. O. Box 591, Opelousas, Louisiana 70571-0591.
(h) CONTRACTOR shall furnish to LOU ANA Certificates of Insurance evidencing that the insurance required herein is in force and contains the required provisions and will be maintained for the duration of the contract, and will furnish LOU ANA confirmed copies of any policies on request.
(i) All liability policies shall be on an occurrence basis.
Whenever an employee of CONTRACTOR suffers an occupational injury or an occupational disease because of work performed under the Contract and such injury or disease is required by the Workmen’s Compensation or Occupational Disease laws to be reported to the proper authorities, two copies of such report shall be furnished promptly by CONTRACTOR to LOU ANA’S representative. CONTRACTOR shall also require all Subcontractors to furnish two copies of such reports to LOU ANA’S representative in connection with injuries or occupational diseases sustained by their employees.
6.2Underwriters and Insurers shall have no right of recovery or subrogation against LOU ANA, as the parties to this Agreement intend that the insurance shall protect both parties and be primarily liable for all tosses covered. The insurance shall be written by a company or companies acceptable to LOU ANA and authorized to do business in Louisiana. 7.0 Indemnification
7.1 The CONTRACTOR agrees to protect, Idemnify, defend, and hold LOU ANA free and harmless from aff fosses, costs, and expenses — including the amount of judgments, penalties, interest, court costs and legal fees —■ of legal liabilities (claims, demands, and causes of action, etc.) imposed in favor of or asserted by governmental agencies or third parties (including employees of CONTRACTOR or of its Subcontractors) caused by or associated with CONTRACTOR’S (or Its Subcontractor's) failure to pay any tax, wage, debt or other sum incurred by CONTRACTOR (or its subcontractors).
7.2 (a) The CONTRACTOR agrees to Idenmlfy and hoid LOU ANA harmless from ail losses, costs, and expenses — including the amount of judgments, penalties, interest, court costs and legal fees — of alleged or actual legal liabilities (including settlements) for personal injuries, Illnesses, deaths or property damage founded upon occurrences (including those involving the concurrent negligence or strict irab/itfy of whatever nature of CONTRACTOR and LOU ANA) in the course of, or Incident to, services performed by CONTRACTOR, Its agents, Subcontractors, or employees unless the occurrence and injury, etc. are determined finally by the highest court of competent jurisdiction to be caused wholly by LOU ANA'S sole negligence.
7.2(b) Indemnification for Claims of Employees
Notwithstanding any other provision of this Agreement, Including 7.2 (a) above, CONTRACTOR agrees to indemnify and hold LOU ANA harmless for all fosses,- costs; and expenses (Including but not limited to all defense costs and attorneys* fees) of alleged or actual legal liabilities and negotiated settlements for personal injuries, illnesses, or deaths sustained by employees of CONTRACTOR or Subcontractors of LOU ANA, including liabilities and settlements based on occurrences caused or alleged to be caused the concurrent .negligence or strict liability of whatever, nature of LOU ANA as follows:
All claims, liabilities, losses, damages, and expenses, of every character whatsoever, for bodily injury, sickness and/or disease, including death at any time resulting therefrom, sustained by any employee of CONTRACTOR, or of a Subcontractor of CONTRACTOR, or of LOU ANA while in, on or about the premises of LOU ANA or the site of the work arising out of or in any way connected with the Contract or with CONTRACTOR’S performance thereunder, and whether or not such injury, sickness and/or disease is due to any negligence on the part of such employee or on the part of LOU ANA, its employees or agents (other than LOU ANA’S sole negligence).
7.2(c) Responsibility for Physical Damage
The CONTRACTOR shall assume all liability for loss of damage to or destruction of all materials to be incorporated in the work and located on the site of the work and the work, except damage or destruction assumed by LOU ANA as hereinafter provided, until such time as the work is accepted by LOU ANA and shall, at the expense of CONTRACTOR, make restitulion to LOU ANA’S representatives’ satisfaction any loss of, damage to or destruction of such materials and the work from any cause whatsoever not specifically assumed by LOU ANA.
CONTRACTOR assumes responsibility for all loss of, damage to or destruction of CONTRACTOR’S tools, machinery, equipment, appliances, shoring, scaffolding, falsework, and all other property used in conneciion with ihe performance jf this Agreement, including CONTRACTOR'S sheds and personal property of CONTRACTOR’S employees, from whatever cause arising.
7.2(d) Notification of Injuries
Each party must notify the other of all injuries, illnesses, and deaths sustained by its employees or its Subcontractor’s employees if such injury, illness, or death has any connection with the work or services performed under this Agreement. Notification must be in writing to the other party’s Contract Administrator and must follow immediately and include a copy of any "Employer’s First Report of Injury" filed by the employer. *
*464 7.⅞ Defense
CON TRACTOR agrees to Investígale, handle, respond to. provide defense for, and defend any claim or other potential legai liability for which it is responsible under this Agreement's indemnification provisions at its sole expense, and agrees to bear all other related costs and expenses, even if such claim, etc. is groundless, false, or fraudulent.
7.4 Enforcement of Indemnity Obligations
All Indemnity obligations assumed by CONTRACTOR are in no way limited by the insurance provisions of this Agreement, as CONTRACTOR agrees that he will be fully responsible for liabilities assumed under this Agreement. All indemnity obligations in this Agreement may be enforced in the courts of Louisiana, with all costs of enforcement and attorney's lees to be paid by the party against whom enforcement is sought.
7.5 Insurer's Acknowledgment
Within 30 days of execution of this Agreement, CONTRACTOR and any of Its Subcontractors shall provide (along with certificates of insurance referred to in paragraph 6.2) a letter of acknowledgment from its insurer, addressed to LOU ANA (LOU ANA FOODS, iNC.), and referring to this Agreement, stating the following:
A.Ail policies issued to AGUILLARD ENTERPRISES_ CONTRACTOR/Subcontractor contain a waiver of subrogation against the company, its divisions, affiliates, parent or subsidiary companies and any of their officers, directors, employees and agents.
B. The policies issued to AGUILLARD ENTERPRISES___, CONTRACTOR/Subcontractor cover all pertinent liabilities for injuries, death, or damages, including contractual liabilities of Indemnification, assumed by the CONTRACTOR under this Contract:
C.The CONTRACTOR’S/Subcontractor’s insurance covering applicable liabilities of contract Various_(number) will not be cancelled or materially changed without 30 days advance written notice to LOU ANA at the following address:
Lou Ana Foods, Inc.
P. O. Box 591
Opelousas, Louisiana 70571-0591 Attn.: Contract Administration Dept.
D. All policies issued to AGUILLARD ENTERPRISES_ CONTRACTOR/Subcontractor are on an "occurrence basis" and name the Company, its divisions, affiliates, parent or subsidiary companies and any of their officers, directors, employees and agents as Additional insured.
E. The insurance shall be considered primary insurance to any insurance carried by additional insureds for their own account.
8.0 CONTRACTOR’S Responsibility
0.1 The CONTRACTOR is an independent contractor with full power and authority to select the means, method and manner of performing the services consistent with LOU ANA’S desired results.
8.2 CONTRACTOR may employ Subcontractors only with the written permission of LOU ANA, but shall remain fully responsible for all work done by Subcontractors. CONTRACTOR shall keep adequate records of Subcontractors’ activities, subject to LOU ANA'S right to audit.
6.3 CONTRACTOR shall secure any permits, certificates, licenses, or other required similar documents at CONTRACTOR’S sole expense, except any documents required by law to be issued in the name of LOU ANA. CONTRACTOR shall pay any taxes, penalties or other charges related to documents required for services performed.
9.0 General Terms and Governing Laws
9.1 This Agreement shall bind the parties, their respective successors, heirs and assigns; but this Agreement shall not be assignable by either party without the prior written consent of the other party.
9.2 CONTRACTOR’S and LOU ANA’S obligations are subject to all valid applicable federal, state, and local laws, rules, and regulations.
9.3 No conduct by LOU ANA, including waiver of any single performance of obligations of CONTRACTOR, shall affect required subsequent performance of CONTRACTOR'S obligations under this Agreement.
9.4 This Agreement is the entire Agreement of the parties; no changes shall be effective unless made in writing and executed by both parties. The terms of this Agreement shall govern in any case of conflict between this Agreement and any attached exhibits or subsequent writings, except any amendments executed by the parties.
10.0 Notices
10.1 Every notice, request, statement or biii provided for in this Agreement shall be in writing and mailed or delivered to the following address:
Company: Lou Ana Foods, Inc.
P. O. Box 591
Opelousas, La. 70571*0591
Attn.: Contract Administration Dept.
Contractor: AGUILLARD ENTERPRISES
Rt. 2 Box 219E Bunkie. LA 71322
[[Image here]]